*In re* S.R. *et al.*, Minors (The People of the State of Illinois, Petitioner-Appellee, v. T.T.R., Respondent-Appellant).

Second District   No. 2—00—1249

Opinion filed November 2, 2001.—Modified on denial of rehearing December 5, 2001.

Donald P. Sullivan, of Rockford, for appellant.

Paul A. Logli, State's Attorney, of Rockford (Martin P. Moltz, of State's Attorneys Appellate Prosecutor's Office, of counsel), and Kristine A. Karlin, of Mt. Prospect, for the People.

JUSTICE GROMETER delivered the opinion of the court:

Respondent, T.T.R., appeals from separate orders of the circuit court of Winnebago County declaring him an unfit parent, terminating his parental rights to his two children, Se. R. and Sy. R., and authorizing the appointment of a guardian with authority to consent to the minors' adoption. On appeal, respondent contends that the trial court's finding that he is an unfit parent was against the manifest weight of the evidence. We affirm.

## I. BACKGROUND

Respondent is the father of two children, Se. R. (born on January 13, 1992) and Sy. R. (born on July 12, 1997). On July 8, 1998, the trial court adjudicated the minors neglected. The trial court then made the minors wards of the court and appointed the Department of Children

and Family Services as the legal guardian and custodian of the children. Thereafter, the minors' mother, V.R., voluntarily surrendered her parental rights to the children.

On August 20, 1999, the State separately moved to terminate respondent's parental rights to both children and to appoint a legal guardian with the power to consent to the minors' adoption. Each motion alleged that respondent was unfit on three grounds. Count I alleged child abandonment (750 ILCS 50/1(D)(a) (West 1998)). Count II alleged the failure to maintain a reasonable degree of interest, concern, or responsibility as to the minors' welfare (750 ILCS 50/1(D)(b) (West 1998)). Count III alleged incarceration as a result of a criminal conviction that prevents the discharge of parental duties for a period in excess of two years after the filing of the motion for termination of parental rights, accompanied by little or no previous contact and/or support for the child (750 ILCS 50/1(D)(r) (West 1998)).

A fitness hearing commenced on August 9, 2000. The State's first witness was Sharon Lindley, the minors' maternal grandmother. Lindley characterized her relationship with defendant as "bad." According to Lindley, respondent suffered from drug and alcohol problems that worsened upon the birth of the younger child. Lindley testified that respondent was in prison "lots" when the older minor was young. Moreover, Lindley testified that respondent would hit V.R. if he did not like what she was doing. Lindley took care of the minors for extended periods of time without any support from respondent or V.R. In addition, Lindley stated that respondent did not provide her with any financial support when she cared for the children. Lindley admitted that respondent loved the minors and that he was a good dad when he was "straight." For instance, Lindley noted that, when respondent was with the minors, he cared for and played with them. Lindley stated that during 1998 and 1999, respondent, while incarcerated, never contacted the minors. However, Lindley admitted that respondent later began sending the minors cards and letters.

Following Lindley's testimony, the State introduced into evidence a certificate of conviction from Winnebago County in which defendant was convicted of burglary. The conviction occurred in 1998, and defendant was sentenced to a term of 20 years' imprisonment. The State then called respondent to testify.

Respondent stated that he has been incarcerated twice in Illinois and one time each in Wisconsin and Indiana. Respondent recalled that in 1994 he began serving a 16- or 18-month sentence in Wisconsin on a parole violation. At the time of the fitness hearing, respondent was incarcerated in Indiana on a burglary charge. Respondent anticipated being released in January 2003. Respondent testified that his Indiana

sentence runs concurrently with his Illinois burglary conviction, but he added that it was "still up in the air" whether he would be transferred to an Illinois prison once he serves his Indiana sentence. Respondent acknowledged that he was not immediately incarcerated when he was convicted of burglary in Winnebago County because he was "on the run" at the time.

Respondent admitted that, at certain times, he was unable to raise the minors due to alcohol, drugs, and family problems. Respondent also admitted that his criminal activity made it "complicated" for him to be a day-to-day parent for the minors. Respondent testified that since his incarceration in Indiana he has not completed any drug and alcohol treatment programs. However, respondent stated that he does not consider himself to be an addict.

Respondent testified that he has received one service plan from Catholic Charities and that he has complied with it completely. For instance, the service plan encouraged respondent to participate in social services. To that end, respondent participated in Bible study groups, a lifestyle change group, and a high-school-diploma program. The service plan also encouraged respondent to remain drug and alcohol free, so he attended Narcotics Anonymous and Alcoholic Anonymous meetings. Respondent further testified that he maintains regular contact with his children by sending them letters, cards, and gifts.

Donna Kasper, a child welfare case manager with Catholic Charities and respondent's caseworker, testified that the permanency goal for the minors was intensive care pending court action. Kasper never implemented a return-home goal because respondent has several years remaining on his Indiana prison term and he has additional time to serve in prison upon his return to Illinois. Kasper indicated that, due to these circumstances, respondent would be unable to parent the minors. Although there was no plan to return the minors to respondent, Kasper explained that she was required to provide a service plan until a parent's rights are terminated. Although respondent's plan contained no specific tasks directed toward respondent, it recommended that he contact social services in prison, participate in drug and alcohol assessment, attend parenting classes, and sign all consents for release of information. Respondent sent Kasper verification of some of the items included in the service plan.

After the State rested, respondent testified on his own behalf. He stated that he supported his older daughter from her birth in 1992 until he was incarcerated in Wisconsin in 1994. Respondent also testified that he lived with his younger child for about 4½ months, until he was incarcerated in Indiana. Respondent related that he attempted to correspond with the minors while he was in prison but he never

received a response. According to respondent, he learned of the whereabouts of his children only in July 1999, when Kasper contacted him. On cross-examination, respondent admitted that he engaged in criminal activity after the birth of his children and that he has not seen his children since late in 1997.

On August 22, 2000, the trial court ruled on respondent's fitness. The court found that the State had failed to prove that respondent had abandoned the minors. However, the court found that the State presented clear and convincing evidence that respondent was unfit based on his failure to maintain a reasonable degree of interest, concern, or responsibility as to the minors' welfare. The court also found respondent unfit on the basis that he was incarcerated as a result of a criminal conviction that prevented the discharge of his parental duties for a period in excess of two years, accompanied by little or no previous contact and/or support for the children.

On October 18, 2000, the trial court moved to the second phase of the proceeding, the best-interest hearing. At the conclusion of the hearing, the trial court ruled that it was in the best interests of both minors that respondent's parental rights be terminated. The order terminating respondent's parental rights was signed on October 23, 2000. Respondent now appeals.

## II. ANALYSIS

■ The termination of parental rights is an extraordinary measure, given the superior rights of parents, against the rights of others, to raise their children. *In re T.D.*, 268 Ill. App. 3d 239, 245 (1994). The Juvenile Court Act of 1987 therefore provides a bifurcated procedure to determine whether a parent's rights should be terminated. 705 ILCS 405/2—29(2) (West 1998). First, the court must find by clear and convincing evidence that the parent is unfit. *In re Adoption of Syck*, 138 Ill. 2d 255, 277 (1990). If the parent is found unfit, the court must then determine whether the termination of parental rights would serve the child's best interests. *Syck*, 138 Ill. 2d at 277. In this case, respondent challenges only the trial court's determination that he was unfit based on counts II and III of the State's motions.

■ At the trial court level, a finding of parental unfitness must be proved by clear and convincing evidence. *In re E.O.*, 311 Ill. App. 3d 720, 726 (2000). Since the trial court is in the best position to observe the witnesses and evaluate their credibility, our review is limited to determining whether the trial court's decision was against the manifest weight of the evidence. *In re M.J.*, 314 Ill. App. 3d 649, 655 (2000); *In re M.M.*, 303 Ill. App. 3d 559, 565 (1999). A decision is against the manifest weight of the evidence only where the opposite

result is clearly evident or the determination is unreasonable, arbitrary, and not based on the evidence presented. *M.J.*, 314 Ill. App. 3d at 655. In addressing whether the circuit court's decision is against the manifest weight of the evidence, we are guided by the principle that each case concerning parental fitness is *sui generis*. *Syck*, 138 Ill. 2d at 279. Thus, factual comparisons to other cases by reviewing courts are of little value. *T.D.*, 268 Ill. App. 3d at 245. With these principles in mind, we turn to respondent's arguments.

We first address respondent's argument that the trial court erred in finding that the State proved by clear and convincing evidence the allegations of unfitness based on count III of the State's motions. As noted above, count III alleged that respondent was unfit based on incarceration as a result of a criminal conviction that prevents the discharge of parental duties for a period in excess of two years after the filing of the motion for termination of parental rights, accompanied by little or no previous contact and/or support for the children (750 ILCS 50/1(D)(r) (West 1998)).

The trial court found that the State met its burden of proof with respect to the allegations of unfitness based on section 1(D)(r) of the Adoption Act (Act) (750 ILCS 50/1(D)(r) (West 1998)). More specifically, the court found that respondent's contact with the minors was unstable and chaotic, requiring the children to spend extended periods of time with their maternal grandparents. The court pointed out that respondent's incarceration made him unable to exercise any appropriate or immediate contact with the children. In addition, the court opined that any support that respondent provided the children was minimal and insufficient to support the children in any meaningful way or for any sustained period of time.

■ As a preliminary matter, respondent argues that the interpretation of section 1(D)(r) is an issue of first impression. The State disagrees, citing four cases that it claims discuss section 1(D)(r). We agree with respondent that the interpretation of section 1(D)(r) is an issue of first impression. None of the cases cited by the State discuss section 1(D)(r). Moreover, we are disturbed by some misrepresentations in the State's discussion of the cases it cites. For instance, the State claims that this court considered the application of section 1(D)(r) in *In re D.D.*, 309 Ill. App. 3d 581 (2000), *aff'd*, 196 Ill. 2d 405 (2001). However, our discussion in *D.D.* dealt with section 1(D)(s) of the Act (750 ILCS 50/1(D)(s) (West 1998)), an entirely different statutory provision. The State also cites to *In re S.B.*, 316 Ill. App. 3d 669 (2000), suggesting that the reviewing court upheld the trial court's finding of unfitness based on section 1(D)(r) of the Act. However, our reading of *S.B.* indicates that the case does not construe section

1(D)(r). In fact, *S.B.* contains no citation whatsoever to section 1(D)(r). The respondent in *S.B.* was found unfit because of his inability to discharge his parental responsibilities due to mental illness (see 750 ILCS 50/1(D)(p) (West 1998)). *S.B.*, 316 Ill. App. 3d at 672-73.

■ We now address the merits of respondent's argument. Section 1(D)(r) of the Act provides that a parent may be found to be unfit if:

> "(r) The child is in the temporary custody or guardianship of the Department of Children and Family Services, the parent is incarcerated as a result of criminal conviction [*sic*] at the time the petition or motion for termination of parental rights is filed, prior to incarceration the parent had little or no contact with the child or provided little or no support for the child, and the parent's incarceration will prevent the parent from discharging his or her parental responsibilities for the child for a period in excess of 2 years after the filing of the petition or motion for termination of parental rights." 750 ILCS 50/1(D)(r) (West 1998).

Respondent does not argue that the discharge of his parental responsibilities was impaired as a result of his incarceration. However, he suggests that the requirements for the termination of his parental rights were not satisfied in this case because he had "more than limited or non-existent contact with the children before his incarceration" and because there was testimony that he could be a good father at times.

■ We agree that there was testimony that respondent could be a good father at times and that respondent had some contact with the minors. Therefore, we must focus on what the legislature intended by the term "little *** contact." The statute does not quantify or otherwise define the level of contact necessary to avoid a finding of unfitness based on section 1(D)(r). Accordingly, we resort to the rules of statutory construction. The fundamental principle of statutory construction is to ascertain and give effect to the intention of the legislature. *People v. Gonzalez*, 313 Ill. App. 3d 607, 612 (2000). The best evidence of legislative intent is the language used in the statute itself, which must be given its plain and ordinary meaning. *Gonzalez*, 313 Ill. App. 3d at 612. Webster's defines "little" as "small in number" and "lacking distinction." Webster's Third New International Dictionary 1323 (1986).

■ In this case, respondent has not seen his children since late in 1997. In fact, the trial court calculated that between mid-1994 and August 2000 respondent was at liberty for only 10 months. In addition, the record does not indicate that respondent ever requested visitation at the prison. Furthermore, the record reflects that the minors' maternal grandparents took care of the children for extended periods of time during the minors' youth. Lindley testified that, dur-

ing the time she cared for the minors in respondent's absence, he provided no support, financial or otherwise. Moreover, although respondent may have had contact with the children while he was not incarcerated, he admitted that he was unable to raise the minors due to alcohol, drug, and family problems. These problems prevented respondent from developing a significant relationship with his children.

We also point out that, while respondent sent cards, gifts, and letters to the children, the testimony at the fitness proceeding suggests that respondent began writing to his children only after receiving his service plan. Lindley testified that she never received any correspondence from respondent during 1998 and most of 1999. Clearly, under the facts of this case, respondent's contacts with his children were both "small in number" and "lacking distinction." Accordingly, we cannot say that the trial court's finding of unfitness based on section 1(D)(r) was against the manifest weight of the evidence.

Because a finding of parental unfitness may be based on evidence sufficient to support one statutory ground, we need not address whether the State met its burden of proving that respondent was unfit for failure to maintain a reasonable degree of interest, concern, or responsibility as to the children's welfare. *M.M.*, 303 Ill. App. 3d at 567.

## CONCLUSION

For the aforementioned reasons, we affirm the judgment of the circuit court of Winnebago County.

Affirmed.

HUTCHINSON, P.J., and BOWMAN, J., concur.