784 N.E.2d 304 (2002)
336 Ill. App.3d 766
271 Ill.Dec. 86
In the Matter of D.M. and D.M., Minors (The People of the State of Illinois, Petitioner-Appellee,
v.
E.M., Respondent-Appellant).
No. 1-01-4020.
Appellate Court of Illinois, First District, Fourth Division.
December 26, 2002.
*306 Rita A. Fry, Cook County Public Defender, Chicago (James S. Jacobs, of counsel), for Appellant.
Richard A. Devine, State's Attorney, County of Cook, Chicago (Renee Goldfarb, Nancy Grauer Kisicki and Jennifer K. Bagby, of counsel), for Appellee.
Office of the Cook County Public Guardian, Chicago (Patrick T. Murphy, Charles P. Golbert and Deborah Pergament, of counsel), for Minor-Appellees.
Justice HARTMAN delivered the opinion of the court:
Following a hearing, the circuit court found respondent, Erica M., to be an unfit parent and terminated the parental rights to her children, Deshante M. (born December 23, 1992) and Dreonte M. (born June 20, 1996).[1] The court also held that it would be in the children's best interest that a guardian with the right to consent to their adoption be appointed. Respondent appeals, contending that termination of her parental rights was not in the children's best interest in light of the related foster mother's unwillingness to adopt the children.
The issue presented for review is whether the circuit court's termination of respondent's parental rights was against the manifest weight of the evidence.
On October 29, 1998, the State filed petitions for adjudication of wardship for both children and moved to place them in the temporary custody of a Department of Children and Family Services (DCFS) guardianship administrator. Following a hearing, the circuit court found probable cause to believe the children were abused or neglected and that it was a matter of immediate and urgent necessity that the children be placed temporarily in the custody of a DCFS guardianship administrator.
After an adjudicatory hearing on June 22, 1999, the circuit court adjudicated both children abused and neglected. Deshante was born drug exposed in violation of section 2-3(1)(c) (705 ILCS 405/2-3(1)(c) (West 2000)) of the Juvenile Court Act of 1987 (705 ILCS 405/1-1 et seq. (West 2000) (Juvenile Court Act)) and Dreonte was subjected to an injurious environment and a substantial risk of physical injury in contravention of sections 2-3(1)(b) and 2-3(2)(ii) (705 ILCS 405/2-3(1)(b), (2)(ii) (West 2000)) of the Juvenile Court Act.
On September 10, 1999, the circuit court adjudicated the children wards of the court and ruled that respondent was unable, unwilling and unfit to care for, protect, train and discipline Deshante and Dreonte. The DCFS guardianship administrator then was appointed with the right to place the children.
On January 16, 2001, the State filed supplemental petitions to terminate respondent's parental rights and moved to appoint a guardian with the right to consent to the children's adoptions. The petitions *307 alleged that respondent was an unfit parent because she: (1) abandoned the children; (2) failed to maintain a reasonable degree of interest, concern or responsibility for the children's welfare; (3) deserted the children for more than three months next preceding the commencement of the termination proceedings; (4) was an habitual drunkard and/or addicted to drugs other than those prescribed by a physician for at least one year immediately prior to the commencement of the unfitness proceeding; and (5) failed to make reasonable efforts to correct the conditions which were the basis for the removal of the children and/or to make reasonable progress toward the return of the children within nine months after the adjudication of abuse or neglect and/or within any nine month period after said finding.
During the unfitness portion of the termination proceedings, the State and Public Guardian published several DCFS service plans that had been admitted into evidence. An April 13, 1999 service plan stated that respondent made unsatisfactory progress toward the return of her children and documented that she neither sought to complete services, nor visited the children more than once in the previous three months. The October 13, 1999 service plan rated respondent's progress toward the goal of returning her children home as unsatisfactory and noted that no services were put in place due to her lack of interest in complying with the social services agency. This plan also stated that respondent was expected to complete a drug treatment program at the Cook County Jail. An April 13, 2000 service plan stated that respondent did not make herself available for services and documented that she was incarcerated due to her August 2000 arrest for possession of a controlled substance. During her incarceration, respondent did not send cards, gifts or money to her children.
Follow-up reports stated that respondent had completed her drug treatment program in March 2001. Since that time, respondent has visited the children at least once a week.
The circuit court found respondent unfit, noting that she failed to maintain a reasonable degree of interest, concern and responsibility for the welfare of her children and to make reasonable efforts to correct the conditions which were the bases of the children's removal from custody within nine months of the adjudication date. According to the court, respondent neither completed any services, nor visited the children on a regular basis.
A best interest hearing followed, wherein Valencia Phillips, a case manager for Central Baptist Family Services, testified on direct examination that the children were placed with Danielle Barnes, respondent's niece. Phillips described the home as safe and appropriate. She stated that the children are bonded closely with their foster mother. Barnes' three biological children also have bonded well with Deshante and Dreonte. Phillips did not observe signs of abuse or neglect in the foster home. According to Phillips, the foster placement was stable since February 2001.
Phillips also stated she did not discuss adoption with the children due to their young ages. Barnes refused to adopt Deshante and Dreonte because she did not want to interfere with the relationship between respondent and her children. Phillips discovered that Barnes did not want to adopt the children immediately prior to the parental rights termination hearing.
On cross-examination, Phillips testified that the children wished to remain with Barnes. Phillips recommended that subsidized guardianship would be in the children's best interests. She stated that *308 moving from Barnes' home would be traumatic for the children because of their close-knit bond with Barnes. Although the children could be removed from Barnes' home if respondent's parental rights were terminated, Phillips testified that it was in the best interests of the children to terminate respondent's parental rights.
Barnes testified that she has a good relationship with Deshante and Dreonte. According to Barnes, the children always are happy to see respondent when she visits them.
Following closing argument, the circuit court found that termination of respondent's parental rights was in the best interest of the children. The court stated that Barnes' refusal to adopt should not outweigh the children's need for a long-term, stable relationship and noted that this case has been "in the system" for three years, "an enormous amount of time [for respondent] to get [her] act together."
The circuit court also expressed hope that Barnes would reconsider her decision not to adopt the children, but stated "[i]f she is not willing to make that commitment, the agency has to take that into consideration about what plans are made for permanency for these children based on my findings that it is in the best interest of both of the minors" that respondent's parental rights be terminated. The court then appointed a DCFS guardian with the right to consent to adoption.
Respondent appeals the circuit court's decision to terminate her parental rights, but not the finding that she was unfit. She asserts that termination of her parental rights was not in the best interest of the children when considering Barnes' refusal to adopt the children. Respondent notes that the children were thriving in their current placement and the possibility of the children's removal from Barnes' custody following the termination of respondent's parental rights would be traumatic and fracture the ultimate goal of stability.
The State and Public Guardian respond that the absence of an adoptive home is not a bar to termination of parental rights.
Although Illinois courts review parental fitness and termination findings separately, the standard of review for these issues often is not differentiated and instead is conglomerated. See In re M.P., 324 Ill. App.3d 686, 692, 258 Ill.Dec. 244, 755 N.E.2d 1063 (2001); In re M.J., 314 Ill. App.3d 649, 655, 247 Ill.Dec. 735, 732 N.E.2d 790 (2000). Also, there has been disagreement among the divisions of the First District and other appellate districts as to whether an abuse of discretion standard[2] or manifest weight standard[3] should be applied in parental rights termination *309 cases. In addition, some reviewing courts have combined the abuse of discretion and manifest weight standards of review when considering termination findings. See In re G.L., 329 Ill.App.3d 18, 25, 263 Ill.Dec. 607, 768 N.E.2d 367 (1st Dist., 1st Div. 2002); In re C.M., 319 Ill.App.3d 344, 360, 253 Ill.Dec. 183, 744 N.E.2d 916 (1st Dist., 4th Div.2001); In re Sheltanya S., 309 Ill.App.3d 941, 955, 243 Ill.Dec. 441, 723 N.E.2d 744 (1st Dist., 5th Div.1999); In re A.A., 324 Ill.App.3d 227, 234, 257 Ill.Dec. 834, 754 N.E.2d 826 (5th Dist.2001). As a result, the standard of review to be applied in cases solely questioning the termination of parental rights remains unclear.
Normally, a circuit court's findings of fact are reviewed under the manifest weight of the evidence standard. Kel-Keef Enterprises, Inc. v. Quality Components Corp., 316 Ill.App.3d 998, 1012, 250 Ill.Dec. 308, 738 N.E.2d 524 (2000). Because sufficient facts must be presented to and found by the court in determining abuse, neglect or dependence, a factual-basis presentation also is required for a finding of unfitness. In re M.H., 196 Ill.2d 356, 366, 256 Ill.Dec. 297, 751 N.E.2d 1134 (2001). The supreme court definitively has held that a challenge to the sufficiency of evidence in a fitness finding resulting in the termination of parental rights is subject to the manifest weight standard of review. In re D.F., 201 Ill.2d 476, 495, 268 Ill.Dec. 7, 777 N.E.2d 930 (2002); In re D.D., 196 Ill.2d 405, 417, 256 Ill.Dec. 870, 752 N.E.2d 1112 (2001); In re A.B., 308 Ill.App.3d 227, 240, 241 Ill.Dec. 487, 719 N.E.2d 348 (1999).
Once the circuit court has found by clear and convincing evidence that a parent is unfit as defined in section 1(D) (750 ILCS 50/1(D) (West 2000)) of the Adoption Act, the State's interest in protecting the child sufficiently is compelling to allow a hearing to determine whether the termination of parental rights is in the best interests of the child. See 705 ILCS 405/2-29(2) (West 2000); In re R.C., 195 Ill.2d 291, 308, 253 Ill.Dec. 699, 745 N.E.2d 1233 (2001). The appellate court in In re D.R., 307 Ill.App.3d 478, 484, 241 Ill.Dec. 93, 718 N.E.2d 664 (1999) (D.R.) noted the importance of separate hearings to determine parental fitness and the best interests of the child, stating, "a single hearing consolidating the issues of unfitness and best interest carries a risk of prejudice." See also In re Adoption of Syck, 138 Ill.2d 255, 275-76, 149 Ill.Dec. 710, 562 N.E.2d 174 (1990) (Syck). During a parental fitness hearing, the parent's past conduct is under scrutiny. Syck, 138 Ill.2d at 276, 149 Ill.Dec. 710, 562 N.E.2d 174. In contrast, during a parental rights termination hearing, the court focuses upon the child's welfare and whether termination would improve the child's future financial, social and emotional atmosphere. Syck, 138 Ill.2d at 276, 149 Ill.Dec. 710, 562 N.E.2d 174; In re J.T.C., 273 Ill.App.3d 193, 200, 209 Ill.Dec. 881, 652 N.E.2d 421 (1995). "`A separate hearing and determination of the child's best interests is mandatory in order to ensure the proper focus on those interests.'" D.R., 307 Ill.App.3d at 484, 241 Ill.Dec. 93, 718 N.E.2d 664, quoting In re A.P., 277 Ill.App.3d 592, 600, 214 Ill.Dec. 299, 660 N.E.2d 1006 (1996) (A.P.).
Although proof by clear and convincing evidence of one statutory factor of unfitness is sufficient to warrant a parental rights termination hearing (M.S., 302 Ill.App.3d at 1002, 235 Ill.Dec. 969, 706 N.E.2d 524), the circuit court cannot rely solely on fitness findings to terminate parental rights (In re B.C., 247 Ill.App.3d 803, 187 Ill.Dec. 486, 617 N.E.2d 1207 (1993) (B.C.)). The court is required to consider factually-based statutory factors, separate from those considered during parental fitness hearings, which focus upon *310 "the child's age and developmental needs," including, inter alia, (1) the child's physical safety and welfare (food, shelter, health and clothing); (2) a sense of attachment, including where the child actually feels loved, valued and secure, and considering the least disruptive placement alternative for the child; (3) the child's wishes and long-term goals; (4) the child's need for permanence, which includes the need for stability and continuity of relationships with parental figures, siblings and other relatives; (5) the risks attendant to entering and being in substitute care; and (6) the preferences of the persons available to care for the child. 705 ILCS 405/1-3(4.05) (West 2000). Because the court must consider these factual bases, which are separate and unrelated to parental fitness statutory factors that already have been proven by clear and convincing evidence, an appeal involving parental rights termination findings requires its own manifest weight standard of review.
Nevertheless, reviewing courts have applied the abuse of discretion standard in parental rights termination cases although the circuit courts' findings were factually-based. See In re Jeffrey S., 329 Ill.App.3d 1096, 1101, 264 Ill.Dec. 277, 769 N.E.2d 1114 (2002); M.S., 302 Ill.App.3d at 1003, 235 Ill.Dec. 969, 706 N.E.2d 524; In re V.O., 284 Ill.App.3d 686, 691, 220 Ill.Dec. 527, 673 N.E.2d 439 (1996). Under the abuse of discretion standard, the reviewing court must determine whether the circuit court "`acted arbitrarily without the employment of conscientious judgment or, in view of all the circumstances, exceeded the bounds of reason and ignored recognized principles of law so that substantial prejudice resulted.'" Kaden v. Pucinski, 263 Ill.App.3d 611, 615, 200 Ill. Dec. 129, 635 N.E.2d 468 (1994), quoting Zurich Insurance Co. v. Raymark Industries, Inc., 213 Ill.App.3d 591, 594-95, 157 Ill.Dec. 655, 572 N.E.2d 1119 (1991). Accordingly, if the admission or denial of evidence during the parental rights termination hearing is at issue on appeal, rather than the sufficiency of evidence, the abuse of discretion standard of review is appropriate. See In re M.B.C., 125 Ill.App.3d 512, 514, 80 Ill.Dec. 821, 466 N.E.2d 273 (1984) (holding the circuit court did not abuse its discretion by allowing evidence of the biological father's criminal convictions for purposes of showing depravity that statutorily warranted termination of parental rights). If, however, the sufficiency of evidence presented at the parental rights termination hearing is challenged on appeal, the appropriate method of review is the manifest weight standard.
In the instant case, review of the circuit court's factual findings warranting the termination of respondent's parental rights are subject to the manifest weight standard of review. A decision is against the manifest weight of the evidence and subject to reversal on appeal if the facts clearly demonstrate that the court should have reached the opposite result. In re N.B., 191 Ill.2d 338, 346, 246 Ill.Dec. 621, 730 N.E.2d 1086 (2000). The reviewing court does not reweigh the evidence or reassess the credibility of the witnesses. In re K.B., 314 Ill.App.3d 739, 748, 247 Ill.Dec. 866, 732 N.E.2d 1198 (2000). The question of what is in the best interests of the child should not be treated lightly. A.P., 277 Ill.App.3d at 599, 214 Ill.Dec. 299, 660 N.E.2d 1006.
In support of her argument that the circuit court's decision was against the manifest weight of the evidence, respondent cites B.C., which held that the mother's parental rights were terminated improperly although she was found to be a depraved person and an unfit parent due to her criminal background, which included *311 the attempted transmission of HIV and drug use. 247 Ill.App.3d at 807, 187 Ill. Dec. 486, 617 N.E.2d 1207. The evidence demonstrated that the mother had participated in various programs for drug rehabilitation since being incarcerated. She also completed other programs aimed at helping her reestablish herself in society. Further, a DCFS caseworker testified that it was not in the minor's best interest to be adopted; that the minor loved his mother and had a strong desire to be with her; and that the minor would suffer emotional trauma if the mother's parental rights were terminated.
The B.C. court found that the State failed to prove by clear and convincing evidence that it was in the children's best interest to sever the mother's parental rights. The court stated that "when the State relies solely upon a finding of depravity to support the termination of parental rights, it must establish some connection between the depraved conduct and the alleged need to terminate parental rights." B.C., 247 Ill.App.3d at 807, 187 Ill.Dec. 486, 617 N.E.2d 1207.
In the case sub judice, the State presented evidence beyond the unfitness findings that are distinguishable factually from B.C. The State connected the findings of unfitness to evidence warranting the termination of respondent's parental rights by establishing that respondent failed to complete any services towards reunification, exposed the children to a drug environment by using controlled substances while caring for them, failed to maintain regular contact with the children and visited them only sporadically. The record shows the children were in a safe and appropriate foster placement, with no signs of abuse or neglect. They bonded well to their foster parent and the other children in the home. Although there was testimony that the children would find the discussion of adoption confusing and traumatic, Phillips nevertheless supported Barnes' desire for subsidized guardianship and recommended that it was in the children's best interest to terminate respondent's parental rights. Unlike B.C., there was no evidence indicating that the children would suffer emotional trauma should termination or adoption occur.
Respondent also relies upon a California Court of Appeal decision, In re Jayson T., 97 Cal.App.4th 75, 118 Cal.Rptr.2d 228 (2002) (Jayson T.), to argue that the effect of the circuit court's order was to render Deshante and Dreonte legal orphans with no countervailing evidence that they were adoptable. In Jayson T., the court reversed the judgment terminating parental rights and remanded the cause for an "updated review hearing" pursuant to section 366.26 (Cal. Welf. & Inst.Code § 366.26 (West 2002)) of the California Welfare and Institutions Code. As a matter of public policy, the court stated that "[a] child should not be condemned to legal orphanage merely because possible problems with his or her adoptability were, as in this case, not discovered or glossed over by the trial court." Jayson T., 97 Cal.App.4th at 78, 118 Cal.Rptr.2d 228. In determining the child's best interests, the Jayson T. court found that "[t]he trial court cannot terminate parental rights unless the child is adoptable, because if [not], the proceeding will have done nothing to benefit the child other than to permanently separate the child from [his or her] natural parents, and condemn the child to permanent foster care." 97 Cal.App.4th at 86, 118 Cal. Rptr.2d 228.
In Illinois, the appellate court in B.S. addressed the issue concerning the lack of prospective adoptive parents upon termination of parental rights. There, a DCFS worker testified that the children expressed a desire to stay in their present *312 foster home. Although the foster parents did not wish to adopt the children, they were willing to keep all three children. DCFS informed the circuit court that subsidized guardianship was being considered as an alternative to adoption, but the search for an adoptive home would continue.
The B.S. court noted that "[t]he decision to terminate a parent's rights is based on the [circuit] court's determination that freeing the children for adoption would be in the best interests of the children." 317 Ill.App.3d at 665, 251 Ill.Dec. 323, 740 N.E.2d 404. The court stated:
"[t]hough the current availability of an adoptive home is one of the considerations when deciding whether termination of a parent's rights is in the best interests of a child, it is not the only one. It may be just as important to free children from continued involvement with a mother whose chaotic and disruptive lifestyle is a detriment to their welfare." B.S., 317 Ill.App.3d at 665, 251 Ill.Dec. 323, 740 N.E.2d 404.
The appellate court affirmed the circuit court's decision to terminate the mother's parental rights although adoption did not occur, because termination gave the children an opportunity for some permanency in their lives, allowing them to have a secure and stable home environment with the foster family. B.S., 317 Ill.App.3d at 665, 251 Ill.Dec. 323, 740 N.E.2d 404.
Likewise, the circuit court in the instant case properly concluded that the children's need for a long-term, stable relationship outweighed the necessity of an available adoptive home immediately upon termination of respondent's parental rights. The record shows the children wish to remain with Barnes. It also is clear from the record that respondent cannot provide a home for Deshante and Dreonte that would provide safety, security, health and love. Therefore, the court's termination of respondent's parental rights was not against the manifest weight of the evidence.
Accordingly, yielding all considerations to the best interest of the children (In re J.J., 307 Ill.App.3d 71, 77, 240 Ill.Dec. 252, 716 N.E.2d 846 (1999)), the decision of the circuit court of Cook County to terminate respondent's parental rights and appoint a guardian with the right to consent to adoption is affirmed.
Affirmed.
THEIS, P.J., and GREIMAN, J., concur.
NOTES
[1] The circuit court also found unfit and terminated the parental rights of Jarmaine Rockett, father of Deshante, and Luke Matthews, father of Dreonte. Rockett and Matthews are not parties to the instant appeal.
[2] The following courts have applied the abuse of discretion standard in parental rights termination cases: In re D.H., 323 Ill.App.3d 1, 13, 256 Ill.Dec. 1, 751 N.E.2d 54 (1st Dist., 1st Div.2001); In re D.L., 326 Ill.App.3d 262, 271, 260 Ill.Dec. 125, 760 N.E.2d 542 (1st Dist., 2nd Div.2001); In re B.S., 317 Ill. App.3d 650, 664, 251 Ill.Dec. 323, 740 N.E.2d 404 (1st Dist., 3rd Div.2000) (B.S.); In re Jason U., 214 Ill.App.3d 545, 550, 158 Ill.Dec. 296, 574 N.E.2d 90 (1st Dist., 6th Div.1991); In re M.S., 302 Ill.App.3d 998, 1003, 235 Ill.Dec. 969, 706 N.E.2d 524 (2nd Dist. 1999) (M.S.); In re D.J.S., 308 Ill.App.3d 291, 295, 241 Ill.Dec. 765, 719 N.E.2d 1168 (3rd Dist. 1999).
[3] The following courts have applied the manifest weight standard in parental rights termination cases: In re F.S., 322 Ill.App.3d 486, 489, 255 Ill.Dec. 551, 749 N.E.2d 1033 (1st Dist., 1st Div.2001); In re S.R., 326 Ill.App.3d 356, 360, 260 Ill.Dec. 225, 760 N.E.2d 998 (2nd Dist.2001); In re M.F., 326 Ill.App.3d 1110, 1115-16, 261 Ill.Dec. 132, 762 N.E.2d 701 (4th Dist.2002); In re M.P., 324 Ill.App.3d 686, 692, 258 Ill.Dec. 244, 755 N.E.2d 1063 (5th Dist.2001).