2019 IL App (1st) 190876-U

SIXTH DIVISION
December 6, 2019

No. 1-19-0876

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| IN THE INTEREST OF M.B., | ) | Appeal from the |
| | ) | Circuit Court of |
| (THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Cook County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 13 JA 262 |
| | ) | |
| MAURICE B., | ) | |
| | ) | Honorable Patrick T. Murphy, |
| Respondent-Appellant). | ) | Judge Presiding. |

JUSTICE CONNORS delivered the judgment of the court.
Presiding Justice Mikva and Justice Cunningham concurred in the judgment.

**ORDER**

¶ 1        *Held:* The trial court's order finding respondent unfit and terminating his parental rights is reversed because the trial court did not hold separate unfitness and best interest hearings. The case is remanded to the trial court to conduct separate hearings to determine the issues of unfitness and best interest.

¶ 2        This is an expedited appeal involving the care and custody of a minor child, M.B. Respondent Maurice B. is the biological father of the minor and appeals from the trial court's order that (1) found him unfit based on failing to maintain a reasonable degree of interest, concern and responsibility towards the minor's welfare (750 ILCS 50/1(D)(b) (West 2018)); (2)

found him unfit for failing to make reasonable efforts to correct the conditions that were the basis for the removal of the minor from him during any nine-month period following the adjudication of neglect or abuse (750 ILCS 50/1(D)(m)(i) (West 2018)); (3) found him unfit for failing to make reasonable progress towards the return home of the minor during any nine-month period following the adjudication of neglect or abuse (750 ILCS 50/1(D)(m)(ii) (West 2018)); (4) involuntarily terminated his parental rights; and (5) appointed a guardian with the right to consent to adoption of the minor.[1]

¶ 3    Respondent contends that he was denied a fair trial because the trial court failed to comply with the statutory requirements of the Juvenile Court Act (705 ILCS 405/1-1 *et seq.* (West 2018)). He asserts the court did not hold a best interest hearing and, even if it did, it was held before the unfitness part was complete. He argues that the trial court erred when it found him unfit because, at a previous hearing, it had already determined that the State did not prove by clear and convincing evidence that he was unfit. Respondent also contends that the court's finding that he was unfit was against the manifest weight of the evidence and that the court admitted documents into evidence without a proper foundation.

¶ 4    We reverse and remand because the trial court failed to conduct separate hearings as required by the Juvenile Court Act to determine the issues of respondent's unfitness and the minor's best interest. Given our disposition, we need not address the other issues respondent has raised. The following facts are limited only to those of which are relevant to our disposition.

¶ 5    M.B. was born on February 22, 2013, and subsequently taken into temporary protective custody on March 14, 2013. On March 18, 2013, the State filed a petition for adjudication of wardship, alleging that the minor was neglected based on an injurious environment (705 ILCS

---

[1] The minor's biological mother is not a party to this appeal.

405/2-3(1)(b) (West 2012)); neglected based on the presence of a controlled substance in the minor's blood, urine, or meconium, which was not the result of the medical treatment administered to the mother or minor (705 ILCS 405/2-3(1)(c) (West 2012)); and abused based on there being a substantial risk of physical injury to the minor (705 ILCS 405/2-3(2)(ii) (West 2012)). On March 18, 2013, the court found that there was probable cause that M.B. was abused and neglected and granted temporary custody of M.B. to the Department of Children and Family Services (DCFS) Guardianship Administrator. The court subsequently appointed counsel for respondent and entered an order finding that he was the biological father of M.B.

¶ 6       On October 4, 2013, the court entered an adjudication order, finding that M.B. was neglected based on an injurious environment and being exposed to drugs as an infant and abused based on a substantial risk of physical injury. On May 5, 2014, the court entered a disposition order, finding that respondent was unable for some reason other than financial circumstances alone to care for, protect, train, or displace the minor. The court adjudicated the minor a ward of the court and appointed the DCFS Guardianship Administrator as guardian of M.B. with the right to place the minor.

¶ 7       On March 8, 2017, the State filed a Supplemental Petition for the Appointment of a Guardian with the Right to Consent to Adoption. The petition alleged, *inter alia*, that respondent and M.B.'s mother were unfit in that they failed to maintain a reasonable degree of interest, concern or responsibility as to the child's welfare (750 ILCS 50/1D(b) (West 2016); 705 ILCS 405/2-29 (West 2016)); failed to make reasonable efforts to correct the conditions which were the basis for the removal of the minor from them during any nine-month period following the adjudication of neglect or abuse (750 ILCS 50/1D(m)(i) (West 2016); 705 ILCS 405/2-29 (West 2016)); and failed to make reasonable progress towards the return home of the minor during any

nine-month period following the adjudication of neglect or abuse (750 ILCS 50/1D(m)(ii) (West 2016); (705 ILCS 405/2-29 (West 2016)). The State requested the court to permanently terminate respondent's rights and appoint a guardian with the right to consent to adoption. Thereafter, the State filed a pleading specifying five different nine-month time periods for respondent's efforts and progress.

¶ 8       On June 1, 2018, the first date of the fitness hearing, the State called two witnesses and respondent called three witnesses. Thereafter, the court called M.B.'s foster parent as a court witness, noting that it wanted to hear about respondent's visits with M.B. Following the foster parent's testimony, the State informed the court that it had one more witness for the fitness part of the hearing and the court continued the case.

¶ 9       At the next hearing date on August 23, 2018, the State called one witness to testify and the case was continued. At the next hearing date on October 9, 2018, the State recalled Rebecca Gonzalez, who was respondent's case worker and had previously testified for the State. Gonzalez testified about respondent's most recent visits with the minor from January 2018 to October 2018. In the middle of Gonzalez's testimony, the court concluded it would continue her testimony because respondent's counsel did not have all the visitation records which were the subject of her testimony. The court then told the parties that it wanted to hear from the foster parents as well as respondent. Respondent's counsel objected, stating that respondent "should be able to hear everyone's testimony before he presents his case in chief." M.B.'s foster mother then testified, after which the court stated that it would wait for the next court date for respondent's testimony and continued the case.

¶ 10    At the next hearing date on October 16, 2018, the State informed the court that Gonzalez had not finished her testimony and tendered visitation logs to the court. The court stated it would review the records and would wait to hear testimony and then continued the case.

¶ 11    At the next court date on December 14, 2018, respondent's counsel informed the court that, "[i]f I were to keep going, I think the father wanted to testify." The court asked the foster parents and respondent if they could work with each other and they each indicated they could do so. Thereafter, the court told respondent's counsel, "You are entitled to put on the rest of your case, *** if you want, but right now it would be guardianship." Following a recess, the court told the State that, "after hearing all the evidence, my ruling would be guardianship. Did you want an opportunity to argue that?" The State and the guardian *ad litem* both responded that guardianship would be "okay." The court concluded that it was going to change the permanency goal to guardianship, stating: "I'm ruling against the State on the TPR and find that because of the evidence, I am going to make no findings. I can't make a finding by clear and convincing evidence with respect to the termination." The court noted that "the father has continued to remain in the child's life, and I think removing that father could be detrimental to the child's well-being, so I'm not going to do it, but it would be guardianship, and follow the Juvenile Court's rules on guardianship." The court stated that it was going to dismiss the termination petition without prejudice.

¶ 12    Thereafter, following a discussion off the record, the court stated that it was "not going to make a finding on the termination or the guardianship" and it was going to continue the case "for about four months, see if you guys can work together." Respondent then asked the court, "Why we just can't do it today? I just hand guardianship over today?" and the court responded, "Well,

we can't do guardian – the State has to file a guardianship petition, and that might take a couple of months anyway. So we'll come back here in April."

¶ 13 At the next court date on April 1, 2019, respondent was not present. The parties disagreed about what had occurred at the last court date, and respondent's counsel told the court that she had not rested or presented her case in chief. The State informed the court that everyone had finished their witnesses and that the issue before the court was whether it would consider guardianship.

¶ 14 Thereafter, Rebecca Gonzalez, the case worker who had previously testified about respondent's visitation, told the court that the foster parents and respondent had set up visitation and had a "good relationship." Gonzalez also stated that she had spoken with respondent and he would be "okay with guardianship." The court then stated that its "inclination would be termination because I think the foster parents are willing to work with him and guardianship, my concern would be a constant fight." Following a short recess, the court stated that guardianship would never work "because [respondent is] going to continue to give the foster parents a hard time." Respondent's counsel told the court that respondent had not rested and that she had additional documents to admit into evidence, after which she summarized those documents and requested the court give more time to hear from respondent. The following colloquy then occurred:

"THE COURT: I mean right now I've heard the evidence. I've bent over backwards here to give parties an opportunity. I think the evidence is clear that [respondent] would cause his daughter and the potential adoptive parents or guardian all kinds problems, based on what I heard. He doesn't want to accept responsibility here. ***

It's now 20 after 10:00. He's not appeared here for a 9:30 case. And it seems to me we have to make a finding here. What finding are you seeking?

[ASSISTANT STATE'S ATTORNEY]: Judge, we'd ask for a finding that father was unfit. You've made those findings. We're asking that you make the finding that he's unfit under the grounds that we alleged; B, interest, concern responsibility, I believe M, efforts and progress.

THE COURT. Done.

[ASSISTANT STATE'S ATTORNEY]: Judge, prior to us getting to this point, you had taken testimony from the foster parents in anticipation of the best interest hearing. I could recall them or I could ask that you take judicial notice of that testimony as well.

[RESPONDENT'S COUNSEL]: Excuse me. Since your honor – I didn't rest as far as the unfitness partition is concerned. I think I'm entitled to make an argument."

Respondent's counsel objected to proceeding and the court allowed her to argue against a finding of unfitness.

¶ 15      The following exchanged occurred after respondent counsel's argument against a finding of unfitness:

"THE COURT: [Assistant State's attorney] you're right, I have heard testimony about best interest. So I'm going to determine it is in the best interest to terminate rights. And this case, I think the record will show that I continually have given the father —  I said maybe this is a guardianship case?  It's [a] six-year-old, but I felt that maybe the father he — the problem with this case, the father showed just enough interest to keep dribbling along, but not enough to get his kid back.  Six years she's been living with

these folks and they're great foster parents, presumably great adoptive parents. And at some point we've got to say, hey, what's best for the kid. So that's the order. Good luck.

[ASISSTANT STATE'S ATTORNEY]: Judge, so the record is clear, you're finding father unfit under all the grounds?

THE COURT: Yes. That's what I said.

[ASISSTANT STATE'S ATTORNEY]: And you are terminating parental rights today?

THE COURT: Yes.

[ASISSTANT STATE'S ATTORNEY]: Appointing Janet Ahern as [M.B.'s] guardian with the right to consent to adoption. And lastly Judge, based upon the evidence you're changing the goal to adoption today?

THE COURT: Yes."

The record shows that the trial court entered a written order that found respondent unfit, involuntarily terminated his parental rights, and appointed a guardian with the right to consent to adoption of the minor. This appeal followed.

¶ 16       Initially, we note that, on appeal, respondent and the State both assert that the trial court did not have jurisdiction when it terminated respondent's parental rights on April 1, 2019, because the court dismissed the State's petition at the December 14, 2018, court date and the State never refiled a petition. We disagree. At the December 14, 2018, court date, the court orally stated that it could not "make a finding by clear and convincing evidence with respect to the termination" and that it was dismissing the petition without prejudice. However, at the end of the hearing, the court also stated that it was "not going to make a finding on the termination or the guardianship" and then it continued the case for four months to "see if you guys can work

together." The written order entered on December 14, 2018, was a "continuance order" that continued the case until April 1, 2019. Accordingly, from our review of the record, it appears that at the December 14, 2018, court date, the trial court did not enter a finding on the termination petition but continued the petition and case for four months. We therefore conclude that the trial court had jurisdiction on April 1, 2019, when it found respondent unfit and terminated his rights. However, as discussed below, we nevertheless agree with the parties that the court's order cannot stand.

¶ 17 Respondent contends that he was denied a fair trial because the trial court did not comply with the statutory requirements of the Juvenile Court Act (705 ILCS 405/1-1 *et seq.* (West 2018)) when it failed to conduct a best interest hearing before it terminated his parental rights. He asserts that, even if we would find that the court did hold a best interest hearing, the court erred because the best interest hearing was held before the unfitness hearing was completed. In response, the guardian *ad litem* and the State both agree that the trial court failed to conduct a bifurcated termination proceeding as required by the Juvenile Court Act. We agree.

¶ 18 "A biological parent's right to raise his or her child is a fundamental liberty interest" and, therefore, involuntary terminating parental rights is a "drastic measure." *In re Gwynne P.*, 215 Ill. 2d 340, 353 (2005). A court's statutory authority to involuntarily terminate parental rights and appoint a guardian with the right to consent to a minor's adoption is set forth in the Juvenile Court Act (705 ILCS 405/1-1 *et seq.* (West 2018)) and the Adoption Act (750 ILCS 50/0.01 *et seq.* (West 2018)). *In re N.G.,* 2018 IL 121939, ¶ 27.

¶ 19 The involuntary termination of parental rights involves a two-step process. *In re Julian K.,* 2012 IL App (1st) 112841, ¶ 1. First, the trial court must conduct "an evidentiary hearing to determine whether a parent is unfit." *In re R.L.*, 352 Ill. App. 3d 985 (2004). If the

trial court determines that a parent is unfit by clear and convincing evidence, then the court must "determine whether it is in the best interests of the child that parental rights be terminated." *In re Ca. B.,* 2019 IL App (1st) 181024, ¶ 26. The unfitness and best interest hearings focus on different factors. *In re Davon H.*, 2015 IL App (1st) 150926, ¶ 65. During the fitness step, the focus is on the parent's past conduct. *Id.* During the termination step, "the focus is on 'the child's welfare and whether termination would improve the child's future financial, social and emotional atmosphere.' " *Id.* (quoting *In re D.M.,* 336 Ill. App. 3d 766, 772 (2002)). The Juvenile Court Act sets forth several factors that the court must consider in the context of child's age and developmental needs when determining whether it is in the minor's best interest to terminate parental rights. *In re N.T.,* 2015 IL App (1st) 142391, ¶ 28 (citing 705 ILCS 405/1-3(4.05) (West 2012)). Separate hearings for unfitness and best interest are "mandatory in order to ensure the proper focus on those interests." *In re A.P.,* 277 Ill. App. 3d 1006, 1012 (1996).

¶ 20       Here, the trial court did not conduct separate hearings to determine respondent's unfitness and the minor's best interests. The record shows that the State and respondent presented evidence for the unfitness step at hearings that took place in June, August, and October of 2018. On December 14, 2018, the court orally concluded that it was changing the permanency goal to guardianship and that it was dismissing the termination petition without prejudice. The court continued the case for about four months to "see if you guys can work together." The record shows the court entered a continuance order, but it does not contain a written order reflecting its oral findings at that hearing.

¶ 21       At the next court date, the parties disagreed about what had occurred on the last court date and respondent's counsel objected to proceeding and repeatedly informed the court that she had not completed the unfitness part of her case. The court nevertheless concluded that it heard

the evidence and then found respondent unfit. The court subsequently allowed respondent's counsel to argue against a finding of unfitness. Following counsel's argument, even though the parties did not present additional evidence or arguments focusing on the minor's best interest or the best interest factors, the court stated that it heard the testimony about best interest and concluded that it was terminating respondent's parental rights. Accordingly, this record shows that the court held only one hearing to determine the issues of respondent's unfitness and M.B.'s best interest. We therefore reverse the trial court's judgment and remand the matter for the trial court to conduct a new termination proceeding in which the issues of fitness and best interest are separated into two hearings that focus on the proper factors. See *In re D.R.,* 307 Ill. App. 3d 478, 482 (1999) (the court reversed and remanded for a new terminating hearing in which the issues of fitness and best interest were bifurcated, finding that the record showed that only one hearing was held on fitness and best interest).

¶ 22      For the foregoing reasons, we reverse the trial court's judgment and remand to the trial court to conduct a new termination proceeding in which the issues of respondent's fitness and the minor's best interest are bifurcated.

¶ 23      Reversed and remanded with directions.