NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 190567-U

NO. 4-19-0567

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 13, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* L.S-D., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Macon County |
|      Petitioner-Appellee, | ) | No. 16JA185 |
|      v. | ) | |
| Talavonte S., | ) | Honorable |
|      Respondent-Appellant). | ) | Thomas E. Little, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices DeArmond and Turner concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, concluding the trial court's findings respondent was an unfit parent and it was in the minor's best interest to terminate her parental rights were not against the manifest weight of the evidence.

¶ 2    Respondent mother, Talavonte S., appeals from the trial court's order terminating her parental rights to L.S-D. (born November 22, 2016). On appeal, respondent argues the trial court's findings she was an unfit parent and it was in the minor's best interest to terminate her parental rights were against the manifest weight of the evidence. We disagree and affirm.

¶ 3    I. BACKGROUND

¶ 4    A. Motion to Terminate Parental Rights

¶ 5    In January 2019, the State filed a motion to terminate respondent's parental rights to L.S-D. In its motion, the State alleged respondent was an unfit parent as she (1) failed to maintain a reasonable degree of interest, concern, or responsibility as to the minor's welfare (750

ILCS 50/1(D)(b) (West 2018)); (2) failed to make reasonable efforts to correct the conditions that were the basis for the removal of the minor during any nine-month period following the January 11, 2017, adjudication of neglected (750 ILCS 50/1(D)(m)(i) (West 2018)); and (3) failed to make reasonable progress toward the return of the minor to her care within any nine-month period following the January 11, 2017, adjudication of neglected, namely January 12, 2017 to October 12, 2017, October 12, 2017, to July 12, 2018, and April 11, 2018, to January 11, 2019 (750 ILCS 50/1(D)(m)(ii) (West 2018)). The State further alleged it was in the minor's best interest to terminate respondent's parental rights and appoint the Department of Children and Family Services (DCFS) as guardian with the power to consent to adoption.

¶ 6                                B. Fitness Hearing

¶ 7        In June 2019, the trial court held a fitness hearing.

¶ 8        Chamica Demus, a former child welfare specialist with Lutheran Child and Family Services, testified she was the assigned caseworker from September 2018 to May 2019. After first being assigned to the case, Demus reviewed the case file and learned the minor came into care shortly after his birth due to a case involving another child of respondent. Demus also learned respondent was recommended to complete parenting, substance-abuse, and mental-health services, maintain housing, and comply with the terms of probation that she was serving for 2016 and 2017 felony aggravated batteries. Demus met with respondent and spoke with her about the need to complete outstanding services to have the minor returned to her care. Demus then continued to meet with respondent once a month.

¶ 9        With respect to respondent's compliance with services, Demus testified to the following. Respondent lived with her mother, but the housing was inadequate because "people

were coming in and out of the home ***." Respondent completed a substance-abuse assessment but did not maintain sobriety. She was asked to complete 10 drug screens, 4 of which she failed to complete and 6 of which she tested positive for Tetrahydrocannabinol (THC). Respondent acknowledged during a meeting that she continued to use marijuana. Respondent was suspended from an anger-management program after "she got into it with another person in the class" and then did not return to complete the program. Respondent paid the fines and fees relating to her probation but then violated her probation by committing a theft. The only service respondent successfully completed since the minor was taken into care was parenting, which she completed in December 2017. Respondent attended visitation with the minor but never reached the point to have unsupervised or extended visits. Demus observed a minimal connection between the minor and respondent.

¶ 10    Based on her review of the case file and her experience serving as a caseworker during the period from September 2018 to January 2019, Demus believed respondent never met the minimal parenting standards to allow the minor to be returned to her care. Demus further did not believe respondent would be able to progress to the point to have the minor returned to her care within the next six months.

¶ 11    On cross-examination, Demus acknowledged preparing a January 3, 2019, permanency review report that recommended the permanency goal be return home within 12 months. She also acknowledged the report indicated the following: (1) the home where respondent resided was cleared for supervised visitations, (2) respondent completed a mental-health assessment in January 2018 which found respondent did not meet the diagnostic criteria for a mental-health diagnosis, (3) respondent completed a substance-abuse assessment in January 2018

which found respondent had maintained and sustained remission of all substance use, (4) respondent failed to appear for two of the three most recent drug screens and then tested positive for THC on the third on October 27, 2018, (5) respondent had supervised visits with the minor twice a week for two hours, and (6) respondent was expected to begin serving a term of incarceration later that month stemming from the recent theft charge. On further cross-examination, Demus acknowledged the guardian *ad litem* objected to the recommended return-home goal in the permanency review report and the goal was not implemented by the trial court.

¶ 12 Deanna McFarland, a former advocate supervisor with Macon County Court Appointed Special Advocates, testified she was assigned to the case from September 2018 to February 2019. During that time, she met with respondent, met with respondent and the minor during a visitation, and met with the minor and his foster mother. At her first meeting with respondent, respondent reported she completed most of her services, which prompted McFarland to request a child and family meeting to make sure that information was correct. McFarland testified she learned at the child and family meeting respondent completed most of her services but tested positive for THC and had recent criminal involvement.

¶ 13 McFarland testified about her observations of the minor when he was with respondent and when he was with his foster mother. The minor appeared to be "two different boys" depending on who he was with. When he was with respondent, the minor appeared "a little uncomfortable" as if "he was just kind of like forced to be there." The minor appeared to have a stronger connection with his foster mother, and any bond between the minor and respondent was not strong. Respondent tried to be involved and care for the minor during visitations.

¶ 14 On cross-examination, McFarland acknowledged she prepared a January 4, 2019,

report that expressed concern with the fact (1) the case had been open since 2016, (2) respondent had not completed services, (3) respondent failed to consistently attend visitation, and (4) respondent continued to engage in criminal activity. McFarland also acknowledged the report indicated the following: (1) the minor had been placed with his foster mother since shortly after his birth, (2) respondent had been engaging in services and completed parenting classes, anger-management courses, and a mental-health assessment, (3) respondent was actively seeking employment, and (4) respondent participated in visitation but her participation was inconsistent.

¶ 15        Respondent testified she received a service plan in July 2017. As to her compliance with services, respondent testified to the following. She completed parenting services. She previously rated satisfactory on the housing goal as she obtained an apartment, and her current residence with her mother was approved for visitations. She previously rated satisfactory on the substance-abuse goal as she completed substance-abuse treatment, refrained from using illegal substances, and fully cooperated with drug screens; however, she acknowledged she later resumed using marijuana. Respondent testified she received a letter indicating she did not have to complete the anger-management program. Respondent acknowledged she was convicted of theft in January 2019 and was sentenced to a term of incarceration. Respondent asserted she attended visits with the minor twice a week for two hours prior to her incarceration.

¶ 16        Respondent testified she had participated in treatment and received good conduct credit since being incarcerated. She also testified she expected to be released from incarceration in October 2019. Respondent expressed a willingness to complete services in order for the minor to be returned to her care.

¶ 17        On cross-examination, respondent acknowledged she was suspended from the

anger-management program for "getting into it" with one of the other participants. She maintained she was told she did not need to return to complete the program.

¶ 18         Based on this evidence, the trial court found respondent was an unfit parent for all the reasons alleged in the State's motion to terminate respondent's parental rights. In so finding, the court indicated it found both Demus's and McFarland's testimony credible, noting, however, it believed McFarland's testimony would be more appropriate for a best-interest hearing.

¶ 19                         C. Best-Interest Hearing

¶ 20         In July 2019, the trial court held a best-intertest hearing. The court received a best-interest report, heard testimony from a child welfare specialist who prepared the best-interest report, and received two exhibits from respondent. The following is gleaned from the evidence presented.

¶ 21         The minor had been residing with his foster mother since shortly after his birth. He was happy, healthy, and bonded to his foster family, which included foster siblings. The minor participated in activities with the foster family. The minor's foster mother engaged with the minor, ensured his milestones were being met, and assured all physician appointments were kept. The foster mother was willing and able to provide for the minor's needs and had expressed a desire to adopt.

¶ 22         Respondent was incarcerated when the best-interest hearing was held. Respondent had received good conduct credit and had a projected release date in December 2019. She also began a treatment program in June 2019 to manage her emotions, develop a support system, and maintain a sober and healthy lifestyle, and, by July 2019, some of her goals had already been completed. The child welfare specialist testified the minor, who was old enough to hold a

conversation, had never referred to respondent. The child welfare specialist also noted the case file she reviewed indicated there appeared to be "no great bond" between the minor and respondent and, during prior visitations, the minor engaged minimally, seemed uninterested, and acted unlike himself.

¶ 23    The child welfare specialist testified she believed it would be in the minor's best interest to stay with his foster mother and terminate respondent's parental rights.

¶ 24    Based on this evidence, the trial court, after considering the statutory best-interest factors found in section 1-3(4.05) of the Juvenile Court Act of 1987 (705 ILCS 405/1-3(4.05) (West 2018)), found it would be in the minor's best interest to terminate respondent's parental rights. The court entered a written order terminating respondent's parental rights.

¶ 25    This appeal followed.

¶ 26                                II. ANALYSIS

¶ 27    On appeal, respondent argues the trial court's findings she was an unfit parent and it was in the minor's best interest to terminate her parental rights were against the manifest weight of the evidence.

¶ 28                            A. Unfitness Finding

¶ 29    Respondent asserts the trial court's finding she was an unfit parent was against the manifest weight of the evidence. The State disagrees.

¶ 30    In a proceeding to terminate parental rights, the State must prove parental unfitness by clear and convincing evidence. *In re N.G.*, 2018 IL 121939, ¶ 28, 115 N.E.3d 102. A trial court's finding of parental unfitness will not be disturbed on appeal unless it is against the manifest weight of the evidence. *Id.* ¶ 29. A finding is against the manifest weight of the evidence "only

where the opposite conclusion is clearly apparent." *Id.*

¶ 31    The trial court found respondent was an unfit parent as defined in section 1(D)(m)(ii) of the Adoption Act (750 ILCS 50/1(D)(m)(ii) (West 2018)). Section 1(D)(m)(ii) provides, in part, a parent will be considered an "unfit person" if he or she fails "to make reasonable progress toward the return of the child to the parent during any [nine]-month period following the adjudication of neglected ***." *Id.*

¶ 32    "Reasonable progress" has been defined as "demonstrable movement toward the goal of reunification." (Internal quotation marks omitted.) *In re C.N.*, 196 Ill. 2d 181, 211, 752 N.E.2d 1030, 1047 (2001). This is an objective standard. *In re F.P.*, 2014 IL App (4th) 140360, ¶ 88, 19 N.E.3d 227. The benchmark for measuring a parent's progress toward reunification "encompasses the parent's compliance with the service plans and the court's directives, in light of the condition which gave rise to the removal of the child, and in light of other conditions which later become known and which would prevent the court from returning custody of the child to the parent." *C.N.*, 196 Ill. 2d at 216-17.

¶ 33    In determining a parent's fitness based on reasonable progress, a court may only consider evidence from the relevant time period. *In re Reiny S.*, 374 Ill. App. 3d 1036, 1046, 871 N.E.2d 835, 844 (2007). Courts are limited to that period "because reliance upon evidence of any subsequent time period could improperly allow a parent to circumvent her own unfitness because of a bureaucratic delay in bringing her case to trial." *Id.*

¶ 34    In this case, a relevant time period was April 11, 2018, to January 11, 2019. During that period, respondent, at a minimum, (1) continued to use illegal substances, (2) failed to report for required drug screens, (3) violated her probation by committing criminal activity, (4) was

convicted of theft and sentenced to a term of incarceration, and (5) failed to an complete anger-management program after being suspended for acting out against another participant. The minor's caseworker testified she did not believe respondent would be able to progress to the point to have the minor returned to her care within the next six months. Based on this evidence, we find the trial court's unfitness finding is not against the manifest weight of the evidence.

¶ 35        As only one ground for a finding of unfitness is necessary to uphold the trial court's judgment, we need not review the other bases for the court's unfitness finding. *In re Z.M.*, 2019 IL App (3d) 180424, ¶ 70, 131 N.E.3d 1122.

¶ 36                              B. Best-Interest Findings

¶ 37        Respondent asserts the trial court's finding it was in the minor's best interest to terminate her parental rights was against the manifest weight of the evidence. The State disagrees.

¶ 38        At the best-interest stage, a "parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life." *In re D.T.*, 212 Ill. 2d 347, 364, 818 N.E.2d 1214, 1227 (2004). The State must prove by a preponderance of the evidence termination is in the child's best interest. *Id.* at 367. When considering whether termination of parental rights would be in a child's best interest, the trial court must consider several statutory factors within the context of the child's age and developmental needs. 705 ILCS 405/1-3(4.05) (West 2018).

¶ 39        This court will not reverse a trial court's finding termination of parental rights is in a child's best interest unless it is against the manifest weight of the evidence. *In re Anaya J.G.*, 403 Ill. App. 3d 875, 883, 932 N.E.2d 1192, 1199 (2010). Again, a finding is against the manifest weight of the evidence only where the opposite conclusion is clearly apparent. *Id.*

¶ 40　　　　Respondent contends the trial court's finding is against the manifest weight of the evidence given the evidence showing "she completed some programs while incarcerated," which, she asserts, "demonstrates [she was] still fighting for her child." As indicated above, however, a parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life at the best-interest stage. *In re D.T.*, 212 Ill. 2d at 364; see also *In re D.M.*, 336 Ill. App. 3d 766, 772, 784 N.E.2d 304, 309 (2002) (noting a trial court's focus at a best-interest hearing is on "the child's welfare and whether termination would improve the child's future financial, social[,] and emotional atmosphere"). Respondent does not dispute the evidence showed the minor's foster parent, as opposed to respondent, was able to provide respondent with a stable, loving home life. Based on the evidence presented, we find the trial court's finding it was in the minor's best interest to terminate respondent's parental rights was not against the manifest weight of the evidence.

¶ 41　　　　　　　　　　　　　III. CONCLUSION

¶ 42　　　　We affirm the trial court's judgment.

¶ 43　　　　Affirmed.