*In re* SABRINA ENIS, a/k/a Sabrina Simpson, a Minor (The People of the State of Illinois, Petitioner-Appellee, v. Larry Enis *et al.*, Respondents-Appellants).

Second District   No. 2—84—0733

Opinion filed July 17, 1986.

Mary Robinson, of Robinson & Skelnik, of Elgin, for appellants.

Fred L. Foreman, State's Attorney, of Waukegan (Kenneth R. Boyle, of State's Attorneys Appellate Prosecutor, of Springfield, and William L. Browers and Cynthia N. Schneider, both of State's Attorneys Appellate Prosecutor, of Elgin, of counsel), for the People.

JUSTICE HOPF delivered the opinion of the court:

The respondents, Larry and Cynthia Enis (the Enises), appeal from the judgment of the trial court of Lake County finding them to be unfit and terminating their parental rights in regard to Sabrina Enis, their natural child. The Enises raise one issue on appeal: whether section 1(D)(f) of the Illinois Adoption Act (Ill. Rev. Stat. 1983, ch. 40, par. 1501(D)(f)) violates due process.

Eleven-month-old Sabrina Enis was admitted to a Waukegan hospital in April 1982 and treated for second- and third-degree burns to her thighs, buttocks, genital area, and both feet. She also had bruises of varying ages in numerous places on her body. Sabrina was placed in the temporary custody of the Department of Children and Family Services (the Department), and the State petitioned to have the child adjudicated a ward of the court pursuant to section 4—8 of the Juvenile Court Act (Ill. Rev. Stat. 1983, ch. 37, par. 704—8). In July 1982, following a hearing at which Sabrina was represented by one public defender and her parents were represented by another public defender, Judge Scott entered a finding that Sabrina had been abused. The following September, after a dispositional hearing, Sabrina was adjudicated a ward of the court. Her parents were directed to cooperate with the Department, which was appointed guardian, and were to

be allowed weekly visits. In December 1982 the court ordered that Sabrina remain a ward of the court but returned her to the custody of her parents, and again ordered the parents to cooperate with the Department and the Lake County public health visiting nurse, as well as with a number of services intended to benefit Sabrina.

Three months later, in March 1983, a comatose Sabrina was brought to the hospital emergency room suffering from an injury to the head which required emergency surgery and placement on a respirator. Examination revealed bruises in various spots on her body. At a shelter care hearing the court again removed Sabrina from the custody of her parents and ordered them to cooperate with the Department. At the same time, the court found no probable cause to believe that the other three children in the parents' custody were abused. Nevertheless, the Department was ordered to monitor all of the children. On May 5, 1983, pursuant to a supplemental petition from the State, and after an adjudicatory hearing, Judge Scott once again found, under the Juvenile Court Act, that Sabrina had been physically abused by both parents. The court also ordered that Sabrina remain in foster care, that parental visitation be scheduled twice a month with the parents confirming visiting time 48 hours in advance, and that the Enises were to seek counseling and to cooperate with both the Department and Central Baptist Family Services.

In May 1983 the State also petitioned for termination of parental rights alleging that the Enises were unfit parents because, among other things, two prior findings of physical abuse had been entered against them, and because of failure to make reasonable efforts to correct the conditions which were the basis for Sabrina's removal from them. The hearing on the termination petition took place on March 1, 1984, before Judge Christian. At that time the court took judicial notice of the two prior findings of abuse and agreed to take judicial notice of the September 1982 order directing the parents to cooperate with the Department. The court also heard testimony, from a Department caseworker and a Central Baptist Family Services social worker, that the Enises refused to sign the plan that had been worked out for them to try to prevent termination of their parental rights. The testimony also showed that the Enises did not visit with Sabrina as often as they could have, or enter into regular counseling. No testimony was offered by or on behalf of the parents.

After the close of testimony, the court once again cited the two prior findings of physical abuse; found that the Enises had substantially neglected Sabrina because they had not cooperated with the Department; concluded that since the first finding of physical abuse

there had been a failure by the parents to make reasonable efforts to correct the conditions which had led to the removal of Sabrina; and held that it was in the child's best interests to terminate parental rights. The Enises' parental rights were then terminated, and the Department was confirmed as guardian with the right to consent to adoption.

The Enises' post-trial motion was denied, and this appeal was timely filed.

■ The Enises posit that the statutory provision which served as a basis for termination of their parental rights is unconstitutional in that it denied them due process. The Illinois Adoption Act (Adoption Act) (Ill. Rev. Stat. 1983, ch. 40, par. 1501 *et seq.*) provides that a parent may be found unfit and his or her rights terminated upon any one of several grounds. The Adoption Act requires that the court's findings of unfitness must be based on clear and convincing evidence. The grounds for unfitness that the trial court relied on, and to which the Enises object, are as follows: "two or more findings of physical abuse to any children under section 4—8 of the Juvenile Court Act ***." (Ill. Rev. Stat. 1983, ch. 40, par. 1501(D)(f).) The Enises object because, under section 4—6(1) of the Juvenile Court Act (Ill. Rev. Stat. 1983, ch. 37, par. 704—6(1)), physical abuse need be proved only by a preponderance of the evidence, rather than the clear and convincing proof otherwise called for in the Adoption Act. It is uncontested that the two findings of physical abuse in this case were proved by a preponderance of the evidence.

The Enises point out that *Santosky v. Kramer* (1982), 455 U.S. 745, 71 L. Ed. 2d 599, 102 S. Ct. 1388, demands that when parental rights are at stake, parental unfitness must be shown by clear and convincing evidence. Here, the Enises claim, parental unfitness has never been shown by more than a preponderance of the evidence. While recognizing the command of *Santosky*, the State argues that the legislature could properly conclude that two findings of physical abuse by a preponderance, cumulatively, amount to clear and convincing evidence of the condition of unfitness. Thus, the State maintains that its only burden at the termination proceeding was to prove, clearly and convincingly, the bare fact that two prior findings of parental physical abuse had been made pursuant to the Juvenile Court Act. In accord with this position, the State offered as evidence at the termination hearing only the orders of July 1982 and May 1983 setting forth the court's findings of abuse. Although the constitutionality of section 1(D)(f) was raised before it, the trial court took judicial notice of the prior abuse findings and made it clear that those findings

were highly significant to its decision to terminate the Enises' parental rights in regard to Sabrina.

While the matter before us is one of first impression, our review of *Santosky v. Kramer* (1982), 455 U.S. 745, 71 L. Ed. 2d 599, 102 S. Ct. 1388, persuades us that the statutory procedure followed here denied the Enises the full measure of due process guaranteed them by the Constitution of the United States.

In *Santosky*, the court struck down a New York statute which allowed the termination of parental rights after a declaration that a child was permanently neglected. The State had to prove its allegation of permanent neglect by a fair preponderance of the evidence. The court held that the fair preponderance burden of proof violated the parents' due process rights.

The *Santosky* court first characterized the interest of natural parents in the care, custody and management of their children as a fundamental liberty interest. If the State moved to destroy this interest, parents must be provided with fundamentally fair procedures. The court then explained that the nature of the process due in parental termination proceedings depends on the balancing of three distinct factors, as set out in *Mathews v. Eldridge* (1976), 424 U.S. 319, 47 L. Ed. 2d 18, 96 S. Ct. 893: the private interests affected; the risk of error created by the State's chosen procedure; and the governmental interest favoring use of the challenged procedure. The court asserted that in the balancing process "the private interest affected is commanding; the risk of error from using a preponderance standard is substantial; and the countervailing governmental interest favoring that standard is comparatively slight." *Santosky v. Kramer* (1982), 455 U.S. 745, 758, 71 L. Ed. 2d 599, 609, 102 S. Ct. 1388, 1397.

The court then evaluated the three factors mentioned above. It first found that termination proceedings caused the loss of a parental interest far more precious than any property right and that the loss is final and irrevocable. The court also noted that at the fact-finding stage the interests of the parent and child are the same in that, until unfitness is proved, they share an interest in preventing erroneous termination of their natural relationship. Thus, they also share an interest in keeping the fact-finding procedures as free from error as possible.

Next, the court examined the relative risk of error created by use of a preponderance standard as compared to a clear and convincing standard. The court stated the relevant question to be whether the lower standard fairly allocates the risk of an error in fact finding between the State and the natural parents. The fact-finding stage of the

New York proceeding, according to the court, had many of the characteristics of a criminal trial. For example, charges were made, service was by summons, formal rules of evidence controlled the hearing, all parties were represented by counsel, testimony was heard, and witnesses were subject to cross-examination. The court asserted that at such a proceeding several factors combined to increase the risk of error in fact finding. Use of imprecise substantive standards allows the court to exercise unusual discretion and leaves factual determinations open to subjective judicial evaluation. Also, the resources available to the State generally outweigh whatever means the parents can marshall in their own defense. Moreover, if the State does not achieve its aim of termination the first time around, it can always try again, and there is nothing the parents can do to stop the State's repeated efforts. The court concluded that these factors, combined with the preponderance standard, create a significant possibility of erroneous termination. It was recognized that a standard of proof which focuses merely on the quantity, rather than the quality of evidence, could mislead the fact finder in a close case. The court saw the social costs of even occasional error to be sizable in light of the private interests at stake.

The *Santosky* court indicated that a preponderance standard allocates the risk of error nearly equally between the parents and the State, and thus does not accurately reflect the parents' commanding interest in preventing the needless breakup of their natural family. The court perceived raising the standard of proof as a method of impressing the fact finder with the importance of a decision regarding termination of parental rights and thus reducing the risk of error in the fact-finding process.

In regard to the State's interests involved in a termination proceeding, the court found them to be twofold: an interest in the welfare of the child, and a fiscal and administrative interest in reducing the cost and burden of such proceedings. The court found that, at the fact-finding stage, the State's interest, like that of both the parent and the child itself, is in determining whether or not the family unit can be kept intact. It is only after unfitness has been proved that their various interests diverge. Thus, ideally, the State also is interested in fact-finding procedures that accurately determine if the parents can continue in their parental role. The court also observed that a stricter standard of proof would not increase fiscal burdens on the State or administrative burdens on the fact finders. It was noted that the New York family court judges were familiar with the higher evidentiary standard in other parental termination proceedings and that

the State demanded clear and convincing evidence in other, lesser proceedings, including traffic violations.

After weighing the three factors, the court held that in termination proceedings, a near equal allocation of risk of error between parents and State is unfair to parents and constitutionally intolerable. The court also held that the clear-and-convincing standard adequately informs the fact finder of how certain he must be about his factual conclusions in order to satisfy due process.

As noted above, under the section of the statute we are concerned with here, the factual proof of grounds for unfitness must be shown only by a preponderance of the evidence. Whether the failure to apply the clear-and-convincing standard to the hearings which underpin section (D)(f) (Ill. Rev. Stat. 1983, ch. 40, par. 1501(D)(f)) was intentional, as the State maintains, or merely oversight by the legislature, as claimed by respondents, is irrelevant in light of *Santosky*. Since, in this case, the juvenile court hearings ultimately formed a basis for termination it must be asked whether they provided fundamentally fair procedures to the parents. As taught by *Santosky*, the process due in such proceedings requires the State to prove its factual allegations by clear and convincing evidence. At the juvenile court hearings here, the State had to prove physical abuse only by a preponderance. (Ill. Rev. Stat. 1983, ch. 37, par. 704—6(1).) Thus, on its face, section 1(D)(f), which allows termination on less than clear and convincing proof of physical abuse, does not comply with the requirements of due process.

■ Nor can it be argued that the three factors balanced in *Santosky* are not applicable. The private interests here, loss of parental rights, and the shared parent-child interest in preventing an erroneous destruction of their relationship, are the same as those in *Santosky* and must be given commanding weight in the balancing process.

The same factors which created the risk of error under a preponderance standard in *Santosky* are also present here. Hearings under the Juvenile Court Act exhibit many hallmarks of criminal proceedings: service is by summons (Ill. Rev. Stat. 1983, ch. 37, par. 704—3), evidence is presented and testimony heard (Ill. Rev. Stat. 1983, ch. 37, par. 701—20), witnesses may be cross-examined (Ill. Rev. Stat. 1983, ch. 37, par. 701—20), parties have the right to be represented by counsel (Ill. Rev. Stat. 1983, ch. 37, par. 701—20). As the *Santosky* court pointed out, at this kind of proceeding substantive standards are imprecise and the trier of fact has great discretion. Factual determinations are vulnerable to subjective evaluations. The other *Santosky* factors tending to increase the risk of error are present here also. In contrast to the State's ability to present its case, the Enises

appeared to be only partially and/or sporadically employed during most of the time in question and were receiving public aid for their children. They were evidently unable to afford counsel of their own choice. If termination is not upheld at this time, the State may well try again, bringing in new or better evidence. All of the above factors militate in favor of error in the fact-finding process, particularly when the standard of proof is only a preponderance, which focuses on the quantity of evidence presented. In light of the fundamental interest the Enises have in not losing all control over one of their children, the cost to them of any error in the fact-finding process is very great.

Presumably the State's interests here are the same as New York's interests in *Santosky*. Illinois' first concern about Sabrina's welfare should be to make an accurate, first-time assessment of whether her parents can provide her with a normal life. Therefore, one of the State's goals should be an error-free fact-finding process.

Application of the *Santosky* balancing process indicates that the near equal allocation of risk of error between the Enises and the State during the fact-finding process was fundamentally unfair and unconstitutional. If the fact finder had been obligated to find that the evidence of physical abuse was clear and convincing, the risk of error prejudicial to the parents would have been reduced and due process would have been satisfied.

■ We are not persuaded by the State's argument that the legislature could have determined that two findings of abuse, by only a preponderance, cumulatively amount to clear and convincing evidence of unfitness. It is not contested that one finding by only a preponderance would not be constitutionally adequate for purposes of termination of parental rights. Adding a second such finding does not somehow bring about a metamorphosis of the two constitutionally unreliable findings into clear and convincing evidence that these parents have abused their child. On the contrary, all we have is what we began with, *i.e.*, two findings by a preponderance.

The fact of the matter is that both of the abuse hearings suffered from the unfair risk of error on the parents' side of the equation that *Santosky* found offensive to due process in termination proceedings. If the State had had to prove any of the other grounds, *e.g.* abandonment, substantial neglect, extreme or repeated cruelty, it would have had to do so in a clear and convincing manner. Under section 1(D)(f) the State did not show physical abuse by clear and convincing evidence at either of the juvenile proceedings and was not required to do so at the termination hearing. As a result, although physical abuse is the bottom-line ground for termination, The Enises were never af-

forded a hearing on the matter which was as free from error as due process requires termination hearings to be.

The Enises analogize the procedure set forth in section 1(D)(f) to that found unconstitutional in *Baldasar v. Illinois* (1980), 446 U.S. 222, 64 L. Ed. 2d 169, 100 S. Ct. 1585. The court there struck down the use of an uncounseled misdemeanor conviction to enhance a charge which, upon conviction, resulted in a longer prison term than would have been possible without the prior misdemeanor conviction. The court found this to be a violation of the constitutional prohibition on imposition of imprisonment where defendant was not represented by counsel. The analogy is well taken for the propositions that imprisonment, like termination of parental rights, involves too great a loss to be based on unreliable proceedings, and that such proceedings do not acquire greater reliability when used in subsequent actions as the basis for remedies that could not otherwise be imposed.

We found *Washington County Department of Social Services v. Clark* (1983), 296 Md. 190, 461 A.2d 1077, a case cited by respondents, to be persuasive. The court there struck down a statute which allowed adoption without parental consent where the trial court found by clear and convincing evidence that termination of parental rights was in the child's best interests and certain circumstances existed. The statute, however, mandated the courts to presume that if the child had been under continuous foster care in the custody of a child-placement agency for at least two years, it was in the child's best interests to grant the agency a decree of guardianship without parental consent. Addressing this presumption, the *Washington* court said that the clear-and-convincing-evidence requirement had been eliminated, or that the legislature had provided that the presumption supplied the clear and convincing evidence called for in termination proceedings. The court defined the question as whether the parents' due process rights could be satisfied merely by bestowing upon the presumption the status of clear and convincing evidence. The court answered in the negative and cited *Santowsky v. Kramer* (1982), 455 U.S. 745, 71 L. Ed. 2d 599, 102 S. Ct. 1388. The court also cited *Bailey v. Alabama* (1911), 219 U.S. 219, 55 L. Ed. 191, 31 S. Ct. 145, for the principle that the creation of a statutory presumption cannot be the means of escape from constitutional restrictions. The court found that the presumption relieved the State of the burden of proof required for termination of parental rights and held it unconstitutional.

While in the case at bar, section 1(D)(f) (Ill. Rev. Stat. 1983, ch. 40, par. 1501(D)(f)) does not, by its terms, create a presumption, the result is the same as that described above in *Washington County De-*

*partment of Social Services v. Clark* (1983), 296 Md. 190, 461 A.2d 1077. The legislature has provided that clear and convincing evidence is supplied merely by showing that there have been two prior findings of abuse under the Juvenile Court Act. This scheme, like that in *Washington*, relieves the State of the requisite burden of proof and provides a way of avoiding the constitutional restrictions.

In accordance with the views expressed above, we hold that portion of section 1(D)(f) of the Illinois Adoption Act (Ill. Rev. Stat. 1983, ch. 40, par. 1501(D)(f)) which permits a finding of unfitness based on two or more findings of physical abuse to any children under section 4—8 of the Juvenile Court Act, to be unconstitutional.

■ The State proposes that even if the challenged subsection of the Adoption Act is declared unconstitutional, the termination order of the trial court is valid because the evidence is sufficient to find the parents unfit under a separate and independent subsection. The specific subsection cited by the State is 1(D)(m) which sets forth as one basis for a finding of unfitness the following: "[F]ailure by a parent to make reasonable efforts to correct the conditions which were the basis for the removal of the child from such parent ***." (Ill. Rev. Stat. 1983, ch. 40, par. 1501(D)(m).) While subsection (m) clearly provided one factor in the trial court's decision to terminate, we do not believe it formed a separate and independent ground of unfitness.

After the close of evidence at the termination hearing, the trial judge, Judge Christian, set forth the basis for his decision to terminate. He began by stating: "The Court has already indicated that it's taking judicial notice of the *two most important parts* of this case, to wit, that there have been two separate acts of physical abuse found by Judge Scott on the children." (Emphasis added.) The judge then discussed the Enises' failure to cooperate with the Department subsequent to the two abuse findings. He found there there had been a failure to correct the situation which led to those findings and that it was in Sabrina's best interest that parental rights be terminated. Taken as a whole, the judge's explanation of his decision indicates that he himself did not consider subsection (m) an independent basis for termination. Rather, he appears to have determined that subsections (f) and (m) taken together were sufficient.

In any event, on the facts of this case, subsection (m) cannot stand alone as grounds for termination of the Enises' parental rights. As noted above, the Adoption Act requires that a parent's failure to make reasonable efforts to correct the conditions which resulted in the removal of a child must be proved by clear and convincing evidence. Here, the record does not reflect that the required standard of

proof was met.

At the termination hearing, Judge Christian, at the State's request, took judicial notice of the two prior findings of abuse made by Judge Scott, and of the earliest orders to the parents to cooperate with the Department. The only other evidence offered by the State was the testimony of the Department and Central Baptist Family Services social workers which addressed the Enises' failure to follow through with counseling and the number of visits the Enises had with Sabrina after she was removed from their custody the second time. The court did not have before it any transcripts of the earlier hearings or any other presentation of the facts supporting the abuse findings. The absence of the evidence which was adduced at the prior hearings which led to removal of Sabrina prevented an accurate assessment of the parents' efforts to correct the conditions leading to removal.

In *In re Austin* (1978), 61 Ill. App. 3d 344, 378 N.E.2d 538, the court considered the proper standard for determining reasonable progress under the second half of subsection (m), which provides that unfitness may be found when there is a failure "to make reasonable progress toward the return of the child to such parent within 12 months." (Ill. Rev. Stat. 1983, ch. 40, par. 1501(D)(m).) The court said that in determining reasonableness "the record of the prior proceedings for removal of the child are indispensable. In an unfitness hearing, testimony may well cover the current status of the parents and their activities since removal of the children, but the best evidence of the conditions which compelled removal of the children is that prior record. Because it is impossible to measure progress without referring to a prior status, current status and the process by which movement from the one status to the other occurred, absence of evidence regarding the prior status would render a determination of 'reasonable progress' meaningless." (*In re Austin* (1978), 61 Ill. App. 3d 344, 350, 378 N.E.2d 538.) While the *Austin* court was dealing specifically with reasonable progress toward bringing a child home, its remarks obviously go also to reasonable efforts to correct conditions. The court found "reasonable efforts" to be an inherently subjective standard since it does not focus on objective results. Nevertheless, the comments quoted above indicate that the conditions to be corrected are properly determined from the record of the hearing where it was established that, because of those conditions, a child should be removed from the custody of its parents. Only after the trial court has clearly before it the situation which led to removal can it determine whether or not the parents have taken steps to improve that situation. See *In re Robertson*

(1977), 45 Ill. App. 3d 148, 359 N.E.2d 491.

In the instant case, the judge who presided at the termination hearing was not the same judge who heard the facts which resulted in the abuse findings. Nor was the judge at the termination hearing informed about the facts behind those findings. He was presented with neither a transcript, a bystander's report, nor a stipulation. Thus, he was unable to compare the evidence from the abuse hearings with the evidence from the termination hearing. In other words, the trial court had no way to gauge whether or not the Enises had made reasonable efforts to correct the conditions which caused the loss of their daughter. Consequently, the Enises' failure to make reasonable efforts to correct was not shown by clear and convincing evidence, and the State's argument based on subsection (m) must fail.

Based on the foregoing reasoning, the judgment of the trial court of Lake County is reversed, and the matter is remanded for further proceedings in accord with this opinion.

Reversed and remanded.

UNVERZAGT and SCHNAKE, JJ., concur.