818 N.E.2d 1214 (2004)
212 Ill.2d 347
289 Ill.Dec. 11
In re D.T., A Minor (The People of the State of Illinois et al., Appellants, v. Brenda T., Appellee).
No. 96229.
Supreme Court of Illinois.
October 21, 2004.
*1218 Lisa Madigan, Attorney General, Springfield, Richard A. Devine, State's Attorneys, Chicago (Deborah Ahlstrand, Nancy Kisicki, Assistant Attorneys General, Chicago, Renee Goldfarb, James Fitzgerald, Nancy Grauer Kisicki, Carrie Strobel Wells, Stephanie A. Buck, Assistant State's Attorneys, of counsel), for the People.
Patrick T. Murphy, Cook County Public Guardian, Chicago (Charles P. Golbert, Allison D. Ortlieb, Carrie C. Fung, of counsel), for the minor.
Richard T. Cozzola, Sheri M. Danz, Diana C. White, Maureen Looker, Nicole Bazer, Chicago, for appellee.
Myra A. Marcaurelle, Jack L. Block, of Sachnoff & Weaver, Ltd., Chicago, for amici curiae Loyola Childlaw Center and National Coalition for Child Protection Reform.
Justice FITZGERALD delivered the opinion of the court:
In this appeal we determine the proper standard of proof applicable during the "best-interests" portion of a proceeding to terminate parental rights. The circuit court of Cook County terminated respondent mother's parental rights based on the court's "sound discretion," declining to hold the State to a clear and convincing burden of proof, as urged by respondent. The appellate court reversed. Although also rejecting a clear and convincing standard, the appellate court held that the State must demonstrate by a preponderance of the evidence that termination of parental rights is in the minor's best interests, and that the State had failed to meet its burden in this case. 338 Ill.App.3d 133, 272 Ill.Dec. 829, 788 N.E.2d 133. For the reasons discussed below, we affirm in part and reverse in part and remand for further proceedings.

*1219 BACKGROUND
On February 1, 1998, respondent, Brenda T., took her four-year-old son, D.T., to the emergency room of Ravenswood Hospital. D.T. was in severe pain from an injury to his scrotum inflicted by respondent's boyfriend at least 48 hours earlier. The injury was caused by repetitive blunt blows to the scrotum. D.T. was transferred to Children's Memorial Hospital, where he underwent surgery to determine whether castration would be necessary. In addition to this injury, multiple bruises to D.T.'s face, arm, back, buttock and thigh were apparent. A linear bruise on his cheek had the characteristic appearance of a mark left by an open-hand slap. D.T. tolerated the surgery well, and although castration was unnecessary, the injury left D.T. with an increased risk of infertility later in life.
D.T. was discharged from the hospital on February 4, 1998, and taken into protective custody. The trial court later placed guardianship of D.T. in the Department of Children and Family Services (DCFS) and appointed the Cook County public guardian as D.T.'s attorney and guardian ad litem (GAL). After living in a group home for several months, in August, 1998, D.T. was placed in a foster home, where he resided continuously through at least June 2001. At the time of the underlying proceedings, D.T. was participating in individual therapy and performing well academically, but was experiencing some problems socially in school. The foster mother expressed her desire to adopt D.T.
Following the removal of D.T. from respondent's custody, respondent participated in parenting classes, individual therapy, and domestic abuse counseling in accordance with the DCFS client service plans. Respondent attended all scheduled visits with D.T. and was rated satisfactory on service plan tasks. She reportedly made slow but steady progress in therapy.
On July 19, 1999, the State filed a petition seeking termination of respondent's parental rights and appointment of a guardian with the right to consent to adoption. Hearing on the unfitness portion of the State's petition began in September 2000. Completion of the unfitness hearing was delayed pending a determination of the applicability of the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq. (1994)). Ultimately, on April 6, 2001, after hearing testimony from respondent, the foster mother, the DCFS investigator, caseworkers, counselors, and other service providers, the trial court determined that the State had demonstrated, by clear and convincing evidence, that respondent was unfit in that she failed to protect D.T. from an environment injurious to his welfare. Hearing on the best-interests portion of the State's petition commenced the following month, and on June 8, 2001, the trial court found, within its "sound discretion," that it was in D.T.'s best interest to terminate respondent's parental rights.[1] At the time of the hearing, respondent was not able to parent D.T. without supervision. Respondent appealed, challenging the trial court's finding of unfitness, as well as its decision to terminate parental rights.
The appellate court affirmed the finding of unfitness and held that a preponderance of the evidence standard, which the State had failed to satisfy, applies at a best-interests hearing. The appellate court reversed the trial court's order terminating parental rights and remanded the matter for further proceedings. *1220 338 Ill.App.3d at 154-55, 272 Ill.Dec. 829, 788 N.E.2d 133. We allowed the GAL's petition for leave to appeal (see 177 Ill.2d R. 315), and permitted the Cook County State's Attorney to join in that appeal. We also allowed the Loyola Childlaw Center and the National Coalition for Child Protection Reform leave to file a joint amicus curiae brief in support of respondent. See 155 Ill.2d R. 345. We note that respondent has requested cross-relief, pressing her claim that a clear and convincing standard of proof is required at the best-interests hearing. See 177 Ill.2d R. 315(g); 155 Ill.2d R. 318(a). Respondent does not challenge the appellate court's decision affirming the trial court's finding of unfitness. Because our determination of the appropriate standard of proof at a best-interests hearing involves an issue of law, our review proceeds de novo. See In re C.N., 196 Ill.2d 181, 203, 256 Ill.Dec. 788, 752 N.E.2d 1030 (2001).

ANALYSIS
Proceedings to terminate parental rights are governed principally by the Juvenile Court Act of 1987 (705 ILCS 405/1-1 et seq. (West 2000)) and the Adoption Act (750 ILCS 50/1 et seq. (West 2000)). Generally, under the Juvenile Court Act, where a child is adjudicated abused, neglected or dependent, and the State seeks to free the child for adoption, unless the parent consents, the State must first establish that the parent is "unfit" under one or more of the grounds set forth in the Adoption Act. 705 ILCS 405/2-29 (West 2000); 750 ILCS 50/1(D) (West 2000). If the trial court finds the parent to be unfit, the court then determines whether it is in the best interests of the minor that parental rights be terminated. 705 ILCS 405/2-29(2) (West 2000).
The State does not dispute that it bears the burden of proof when it files a petition to terminate parental rights. The Juvenile Court Act expressly sets forth the State's burden during the first step of the termination process, the unfitness hearing. The statute states that parental unfitness must be based upon "clear and convincing evidence." 705 ILCS 405/2-29(2), (4) (West 2000). Although the Juvenile Court Act does not expressly set forth the State's burden during the second step of the termination process, the best-interests hearing, the statute does provide some guidance. The Juvenile Court Act states: "The standard of proof and the rules of evidence in the nature of civil proceedings in this State are applicable to proceedings under this Article." 705 ILCS 405/2-18(1) (West 2000). "[T]his Article" refers to article II of the Juvenile Court Act, titled "Abused, Neglected or Dependent Minors," and includes the section under which the termination petition in this case was filed. See 705 ILCS 405/2-29 (West 2000). The standard of proof in civil proceedings typically is either a "preponderance" or "clear and convincing." See M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 301.6 (8th ed.2004); Bazydlo v. Volant, 164 Ill.2d 207, 212-13, 207 Ill.Dec. 311, 647 N.E.2d 273 (1995). Thus, the language of the Juvenile Court Act suggests that one of these two standards of proof must apply at a best-interests hearing.[2] The appellate court determined *1221 that a preponderance standard is appropriate. 338 Ill.App.3d at 154, 272 Ill.Dec. 829, 788 N.E.2d 133.
The GAL and the State, however, argue that the appropriate standard of proof is "sound discretion." Under this standard, as explained by the State, a trial judge's decision to terminate parental rights would not rest on a quantitative measure of the evidence. Indeed, according to the State, "sound discretion" permits the trial court "to reject perhaps all of the evidence submitted by a party without risk of being reversed based on some perceived balance of the evidentiary scale." The GAL adds that the trial judge's best-interests ruling would be "presumptively correct" on review.
In support of their position, the State and the GAL note that the trial court, in making a best-interests determination, is charged with the daunting task of weighing and balancing the following statutory factors, all in light of the child's age and developmental needs:
"(a) the physical safety and welfare of the child * * *;
(b) the development of the child's identity;
(c) the child's background and ties * * *;
(d) the child's sense of attachments, including:
(i) where the child actually feels love, attachment, and a sense of being valued * * *;
(ii) the child's sense of security;
(iii) the child's sense of familiarity;
(iv) continuity of affection for the child;
(v) the least disruptive placement alternative for the child;
(e) the child's wishes and long-term goals;
(f) the child's community ties, including church, school, and friends;
(g) the child's need for permanence * * *;
(h) the uniqueness of every family and child;
(i) the risks attendant to entering and being in substitute care; and
(j) the preferences of the persons available to care for the child." 705 ILCS 405/1-3(4.05) (West 2000).
The State and the GAL reason that the difficulty and delicacy of a best-interests decision requires that such decision rest within the trial court's discretion. They argue that imposition on the State of a "traditional" or "formalistic" standard of proof, like the preponderance standard adopted by the appellate court, will only impede the trial judge's decision.
Although we agree that determination of a child's best interests presents a difficult and delicate task, requiring a nuanced analysis of the statutory factors, we disagree that the difficulty of the task facing the trial court justifies relieving the petitioner  here, the State  of its burden to demonstrate its entitlement to the relief it seeks. We also disagree with the suggestion that "sound discretion" is some sort of "nontraditional" standard of proof. "Sound discretion" is simply not a standard of proof  traditional, nontraditional, or otherwise. "Standards of proof are concerned with the quantum and quality of proof that must be presented in order to prevail on an issue." M. Davis, A Basic Guide to Standards of Judicial Review, 33 S.D. L.Rev. 469, 469 (1988). As the United States Supreme Court explained:
"The function of a standard of proof, as that concept is embodied in the Due *1222 Process Clause and in the realm of factfinding, is to `instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication.'" Addington v. Texas, 441 U.S. 418, 423, 99 S.Ct. 1804, 1808, 60 L.Ed.2d 323, 329 (1979), quoting In re Winship, 397 U.S. 358, 370, 90 S.Ct. 1068, 1076, 25 L.Ed.2d 368, 379 (1970) (Harlan, J., concurring).
See also 9 J. Wigmore, Evidence §§ 2497 through 2498 (Chadbourn rev. ed.1981) (discussing the "Measure of Jury's Persuasion" in criminal and civil cases). "Sound discretion" says nothing about the degree of confidence the trial judge must have in the correctness of his or her factual conclusions concerning the child's best interests. Rather, as discussed more fully below, sound discretion implies the degree of deference the trial court's decision will be given by a reviewing court. Thus, "sound discretion" is tied to the standard of review; it does not identify a standard of proof.
Although the State argues that the trial court's best-interests determination should not rest on a quantitative measure of the evidence, the State nonetheless argues that it presented "enough" evidence for the trial court to find that termination of respondent's parental rights was in D.T.'s best interests. The State thus effectively concedes that the trial court's decision must be supported by some quantum of evidence. The question remains  how much evidence is "enough" evidence? "Sound discretion" does not provide an answer.
We also find the State's sound discretion standard difficult to reconcile with the nature of the trial court's ruling. When a trial court finds that the best interests of the child warrants termination of parental rights and enters an order to that effect, the parent-child relationship is permanently and completely severed. C.N., 196 Ill.2d at 208, 256 Ill.Dec. 788, 752 N.E.2d 1030, citing Santosky v. Kramer, 455 U.S. 745, 758-59, 102 S.Ct. 1388, 1397, 71 L.Ed.2d 599, 610 (1982); see also 750 ILCS 50/17 (West 2002) (after entry of an order terminating parental rights, the parents "shall be relieved of all parental responsibility for such child and shall be deprived of all legal rights as respects the child"). If this ruling is a matter of judicial discretion, as the State and the GAL argue, then it is reviewable only for an abuse of that discretion. See 2 Ill. L. & Prac. Appeal & Error § 751, at 688 (1953).
"Abuse of discretion" is the most deferential standard of review  next to no review at all  and is therefore traditionally reserved for decisions made by a trial judge in overseeing his or her courtroom or in maintaining the progress of a trial. People v. Coleman, 183 Ill.2d 366, 387, 233 Ill.Dec. 789, 701 N.E.2d 1063 (1998). For example, a trial judge's decision whether to allow or exclude evidence is reviewed for an abuse of discretion (Swick v. Liautaud, 169 Ill.2d 504, 521, 215 Ill.Dec. 98, 662 N.E.2d 1238 (1996)), as is his or her decision to limit discovery (People v. Williams, 209 Ill.2d 227, 234, 282 Ill.Dec. 824, 807 N.E.2d 448 (2004)), impose a sanction for a discovery violation (Sullivan v. Edward Hospital, 209 Ill.2d 100, 110-11, 282 Ill.Dec. 348, 806 N.E.2d 645 (2004)), disqualify counsel (People v. Ortega, 209 Ill.2d 354, 360, 283 Ill.Dec. 530, 808 N.E.2d 496 (2004)), accept or reject a negotiated plea (People v. Henderson, 211 Ill.2d 90, 103, 284 Ill.Dec. 278, 809 N.E.2d 1224 (2004)), and deny a forum non conveniens motion (Dawdy v. Union Pacific R.R. Co., 207 Ill.2d 167, 177, 278 Ill.Dec. 92, 797 N.E.2d 687 (2003)). Accordingly, a trial judge's evidentiary rulings during a best-interests hearing are subject to an *1223 abuse of discretion standard of review. See C.N., 196 Ill.2d at 223, 256 Ill.Dec. 788, 752 N.E.2d 1030; In re D.M., 336 Ill.App.3d 766, 773, 271 Ill.Dec. 86, 784 N.E.2d 304 (2002). But a trial judge's ruling on the ultimate issue at a best-interests hearing  whether the parent-child relationship should be permanently and completely severed  is plainly not the type of ruling to which the highly deferential abuse of discretion review traditionally applies.
The State and the GAL cite to various appellate court cases which state that termination of an individual's parental rights rests within the sound discretion of the trial judge and/or that termination orders are reviewed for an abuse of discretion. E.g., In re D.W., 344 Ill.App.3d 30, 55-56, 278 Ill.Dec. 692, 799 N.E.2d 410 (2003); In re Diane L., 343 Ill.App.3d 419, 425, 278 Ill.Dec. 116, 797 N.E.2d 711 (2003); In re Jeffrey S., 329 Ill.App.3d 1096, 1101, 264 Ill.Dec. 277, 769 N.E.2d 1114 (2002); In re B.C., 317 Ill.App.3d 607, 614, 251 Ill.Dec. 211, 740 N.E.2d 41 (2000); In re D.J.S., 308 Ill.App.3d 291, 295, 241 Ill.Dec. 765, 719 N.E.2d 1168 (1999); In re J.J., 307 Ill.App.3d 71, 76, 240 Ill.Dec. 252, 716 N.E.2d 846 (1999); In re Allen, 172 Ill.App.3d 950, 959, 123 Ill.Dec. 184, 527 N.E.2d 647 (1988); In re Hollis, 135 Ill.App.3d 585, 588-89, 90 Ill.Dec. 523, 482 N.E.2d 230 (1985); In re Dalton, 98 Ill.App.3d 902, 913, 54 Ill.Dec. 323, 424 N.E.2d 1226 (1981). A review of the cited cases, however, reveals no analysis as to the origin or reason behind the appellate court's application of the sound discretion standard. Even in those cases in which the appellate court expressly rejected a clear and convincing standard of proof in favor of sound discretion, the appellate court undertook no review of the propriety of the sound discretion standard itself. See In re Precious W., 333 Ill.App.3d 893, 901-02, 267 Ill.Dec. 422, 776 N.E.2d 794 (2002); In re D.L., 326 Ill.App.3d 262, 270-71, 260 Ill.Dec. 125, 760 N.E.2d 542 (2001); In re G.V., 292 Ill.App.3d 301, 308-09, 226 Ill.Dec. 303, 685 N.E.2d 406 (1997); In re Y.B., 285 Ill.App.3d 385, 393, 221 Ill.Dec. 26, 674 N.E.2d 819 (1996); In re V.O., 284 Ill.App.3d 686, 691, 220 Ill.Dec. 527, 673 N.E.2d 439 (1996). Mere repetition of a purported rule of law does not establish its validity. Moreover, when this court becomes aware that an erroneous burden of proof has become entrenched in the case law, we will not hesitate to correct the error. See People v. Trainor, 196 Ill.2d 318, 332-38, 256 Ill.Dec. 813, 752 N.E.2d 1055 (2001) (holding that the State bears the burden of proof at a recovery proceeding under the Sexually Dangerous Persons Act, notwithstanding 30 years of precedent placing the burden on the defendant). We do so now and hold that "sound discretion" does not define the State's burden of proof at the best-interests stage of a proceeding to terminate parental rights.
We turn to the issue of whether the preponderance standard, adopted by the appellate court, or the clear and convincing standard, urged by respondent, is applicable. Respondent renews her argument, rejected by the appellate court, that the Supreme Court's decision in Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), mandates imposition of a clear and convincing standard of proof at a best-interests hearing.
At issue in Santosky was the constitutionality of a New York statute that permits the state to terminate parental rights upon a finding, supported by a fair preponderance of the evidence, that the child is "permanently neglected." The New York statute, as described by the Court, bifurcates permanent neglect proceedings into a "fact-finding" hearing and a "dispositional" hearing. At the fact-finding hearing, *1224 the State is required to prove permanent neglect, as defined in the statute.[3] At the subsequent dispositional hearing, the court determines what placement would serve the child's best interests. Santosky, 455 U.S. at 748, 102 S.Ct. at 1392, 71 L.Ed.2d at 603. The order terminating the Santoskys' parental rights was entered at the subsequent dispositional hearing. Santosky, 455 U.S. at 752, 102 S.Ct. at 1394, 71 L.Ed.2d at 605. The Supreme Court sustained the parents' challenge to the New York statute and held that the due process clause required proof of permanent neglect by clear and convincing evidence. Santosky, 455 U.S. at 769, 102 S.Ct. at 1403, 71 L.Ed.2d at 617.
The Court noted its long-standing recognition that "freedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment," and that the liberty interest of parents in the care, custody and management of their child "does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State." Santosky, 455 U.S. at 753, 102 S.Ct. at 1394-95, 71 L.Ed.2d at 606. Thus, state action to terminate the relationship between a parent and child must be accomplished by procedures that comport with due process. Santosky, 455 U.S. at 753, 102 S.Ct. at 1394, 71 L.Ed.2d at 606. "When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures." Santosky, 455 U.S. at 753-54, 102 S.Ct. at 1395, 71 L.Ed.2d at 606.
Whether the preponderance standard of proof employed under the New York statute satisfied due process turned on the Court's balancing of the three public and private interest factors identified in Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18, 33 (1976): "the private interests affected by the proceeding; the risk of error created by the State's chosen procedure; and the countervailing governmental interest supporting use of the challenged procedure." Santosky, 455 U.S. at 754, 102 S.Ct. at 1395, 71 L.Ed.2d at 607. The Court determined that the Mathews factors weighed against New York's preponderance standard. The Court explained, in relevant part, that a preponderance standard allocates the risk of error in roughly equal fashion between the parents and the State, but that such allocation is constitutionally intolerable because the possible injury to the parents from an erroneous finding is significantly greater than any harm to the State. Santosky, 455 U.S. at 768, 102 S.Ct. at 1402, 71 L.Ed.2d at 616. An evidentiary standard greater than a fair preponderance is required to reduce the risk of erroneous termination orders. Santosky, 455 U.S. at 764-65, 102 S.Ct. at 1400-01, 71 L.Ed.2d at 614. The Court went on to hold that a "clear and convincing" standard of proof, rather than a "beyond a reasonable doubt" standard, satisfied due process. Santosky, 455 U.S. at 769, 102 S.Ct. at 1403, 71 L.Ed.2d at 617.
Respondent maintains that New York's fact-finding hearing  the first stage of its bifurcated termination proceeding  is comparable to both steps of Illinois' two-step *1225 termination proceeding and that, in accordance with Santosky, a clear and convincing standard of proof must be imposed at an Illinois best-interests hearing. We disagree. If a comparison is to be made between the two proceedings, we conclude, as did the appellate court, that New York's "fact-finding" hearing, during which the court considers whether the child is "permanently neglected" (Santosky, 455 U.S. at 748, 102 S.Ct. at 1392, 71 L.Ed.2d at 603), is comparable to the "unfitness" portion of an Illinois termination proceeding, during which the court considers whether the parent is "unfit." New York's subsequent "dispositional" hearing, during which the court considers what placement will serve the child's best interests (Santosky, 455 U.S. at 748, 102 S.Ct. at 1392, 71 L.Ed.2d at 603), is comparable to the "best-interests" portion of an Illinois proceeding. Thus, the clear and convincing evidentiary standard adopted in Santosky for New York's fact-finding hearing is applicable only to Illinois' unfitness hearing. We note that following issuance of Santosky, the Illinois legislature amended the Juvenile Court Act, raising the State's evidentiary burden necessary to support a finding of parental unfitness from a preponderance of the evidence to clear and convincing evidence. See Pub. Act 83-138, eff. August 19, 1983, amending Ill.Rev.Stat.1983, ch. 37, par. 705-9(2).
In addition to her contention that Santosky is dispositive, respondent contends that "[b]ecause the parent-child relationship still exists at the best-interests stage of a termination proceeding, Due Process requires that the burden of proof be clear and convincing." We agree with respondent that, until an order is entered terminating parental rights, the parent-child relationship exists. See In re C.W., 199 Ill.2d 198, 216, 262 Ill.Dec. 802, 766 N.E.2d 1105 (2002). We disagree, however, that parents are entitled to the same procedural safeguard, i.e., the same standard of proof, at the best-interests hearing that they are entitled to at the unfitness hearing.
In any given proceeding, the minimum standard of proof the due process clause permits reflects the weight of the private and public interests affected, as well as a societal judgment about how the risk of error should be allocated between the parties. Santosky, 455 U.S. at 755, 102 S.Ct. at 1395, 71 L.Ed.2d at 607. "The more stringent the burden of proof a party must bear, the more that party bears the risk of an erroneous decision." Cruzan v. Director, Missouri Department of Health, 497 U.S. 261, 283, 110 S.Ct. 2841, 2854, 111 L.Ed.2d 224, 245 (1990). For example, in a criminal case the private interests of the defendant are of such magnitude that society imposes the risk of error almost entirely on itself by requiring the State to prove the defendant's guilt "beyond a reasonable doubt." Addington, 441 U.S. at 423-24, 99 S.Ct. at 1808, 60 L.Ed.2d at 329. This high standard of proof reduces the risk of finding an innocent person guilty, but increases the risk of acquitting a guilty person. Lyon v. Department of Children & Family Services, 209 Ill.2d 264, 279, 282 Ill.Dec. 799, 807 N.E.2d 423 (2004).
In contrast, civil cases generally require the lesser "preponderance" standard of proof. This standard allocates the risk of error roughly equally between the litigants (Santosky, 455 U.S. at 755, 102 S.Ct. at 1395, 71 L.Ed.2d at 607), reflecting the view that the interests at stake are of relatively equal societal importance (Lyon, 209 Ill.2d at 281, 282 Ill.Dec. 799, 807 N.E.2d 423). In some civil cases, however, the interests at stake are deemed to be more substantial, requiring a higher standard than a preponderance. In these cases, a clear and convincing standard is *1226 imposed. Addington, 441 U.S. at 424, 99 S.Ct. at 1808, 60 L.Ed.2d at 329-30; Bazydlo, 164 Ill.2d at 213, 207 Ill.Dec. 311, 647 N.E.2d 273. The clear and convincing standard requires proof greater than a preponderance, but not quite approaching the criminal standard of beyond a reasonable doubt. Bazydlo, 164 Ill.2d at 213, 207 Ill.Dec. 311, 647 N.E.2d 273. A party burdened with a clear and convincing standard shoulders a greater share of the risk of an erroneous determination. See Cruzan, 497 U.S. at 283, 110 S.Ct. at 2854, 111 L.Ed.2d at 245.
In determining whether, as argued by respondent, a clear and convincing standard is the minimum burden of proof at a best-interests hearing that the due process clause will allow, we apply the test developed in Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). See In re Andrea F., 208 Ill.2d 148, 165, 280 Ill.Dec. 531, 802 N.E.2d 782 (2003) (evaluating challenged procedure at parental rights termination proceeding under Mathews); In re M.H., 196 Ill.2d 356, 364-65, 256 Ill.Dec. 297, 751 N.E.2d 1134 (2001) (same). Under Mathews, the dictates of due process require consideration of three factors: "[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335, 96 S.Ct. at 903, 47 L.Ed.2d at 33.
Two private interests are at stake in a proceeding to terminate parental rights: the parent's fundamental liberty interest in the care, custody and management of his or her child (Santosky, 455 U.S. at 758-59, 102 S.Ct. at 1397, 71 L.Ed.2d at 610; M.H., 196 Ill.2d at 365, 256 Ill.Dec. 297, 751 N.E.2d 1134), and the child's interest in a "normal family home" (Santosky, 455 U.S. at 759, 102 S.Ct. at 1398, 71 L.Ed.2d at 610), or, as our appellate court described it, an "interest in a loving, stable and safe home environment" (338 Ill.App.3d at 152, 272 Ill.Dec. 829, 788 N.E.2d 133). See also People v. R.G., 131 Ill.2d 328, 354, 137 Ill.Dec. 588, 546 N.E.2d 533 (1989) ("[t]he minor also has a private interest in his or her own well-being and in a stable environment"). At the unfitness stage, the interests of the parent and the child coincide to the extent that they both "share a vital interest in preventing erroneous termination of their natural relationship." Santosky, 455 U.S. at 760-61, 102 S.Ct. at 1398, 71 L.Ed.2d at 611. The alignment of these interests at the unfitness hearing favors the use of error-reducing procedures, i.e., use of a more stringent burden of proof than a preponderance. See Santosky, 455 U.S. at 760-61, 102 S.Ct. at 1398, 71 L.Ed.2d at 611. The same, however, is not true at a best-interests hearing. Once the State proves parental unfitness, the interests of the parent and the child diverge. Santosky, 455 U.S. at 760, 102 S.Ct. at 1398, 71 L.Ed.2d at 611. Thus, at a best-interests hearing, the parent and the child may become adversaries, as the child's interest in a loving, stable and safe home environment become more aligned with the State's interest in terminating parental rights and freeing the child for adoption. Although the parent still possesses an interest in maintaining the parent-child relationship, the force of that interest is lessened by the court's finding that the parent is unfit to raise his or her child.
The second Mathews factor requires us to consider the risk of an erroneous *1227 deprivation of the parent's and child's interests resulting from the use of a preponderance standard and the likelihood that a higher evidentiary standard  clear and convincing  would reduce the risk of error. See Santosky, 455 U.S. at 761, 102 S.Ct. at 1399, 71 L.Ed.2d at 612. At the unfitness hearing, the focus is on the parent's conduct relative to the ground or grounds of unfitness alleged by the State. The trial court is not permitted to consider the child's interests. In re D.D., 196 Ill.2d 405, 417, 256 Ill.Dec. 870, 752 N.E.2d 1112 (2001). A clear and convincing standard underscores the importance of the parent's interest and the fact that such interest will not be extinguished lightly. M.H., 196 Ill.2d at 365, 256 Ill.Dec. 297, 751 N.E.2d 1134. A clear and convincing standard reduces the risk that a fit parent will be found unfit.
Following a finding of unfitness, however, the focus shifts to the child. The issue is no longer whether parental rights can be terminated; the issue is whether, in light of the child's needs, parental rights should be terminated. Accordingly, at a best-interests hearing, the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life. See In re G.L., 329 Ill.App.3d 18, 24, 263 Ill.Dec. 607, 768 N.E.2d 367 (2002); In re A.H., 215 Ill.App.3d 522, 531, 159 Ill.Dec. 32, 575 N.E.2d 261 (1991); Allen, 172 Ill.App.3d at 959, 123 Ill.Dec. 184, 527 N.E.2d 647. The stricter clear and convincing burden of proof would place a greater share of the risk of an erroneous determination on the State, operating to the benefit of the parent, but to the detriment of the child. This is so because an erroneous finding that termination of parental rights is not in the child's best interests results in preservation of the parent-child relationship, to the obvious favor of the unfit parent. Such an erroneous finding, however, would also deprive the child of the opportunity for permanency, one of the stated goals of the Juvenile Court Act (705 ILCS 405/1-2(1) (West 2000)), and subject the child to the frequently uncertain and fluctuating world of foster care. Thus, application of a clear and convincing burden of proof at the best-interests hearing does not adequately safeguard the interest of the child in a "normal family home" (Santosky, 455 U.S. at 759, 102 S.Ct. at 1398, 71 L.Ed.2d at 610). Imposition of a preponderance standard, however, would distribute the risk of error relatively equally, reflecting the roughly equal interest the parents, the State, and the child have in the outcome of the proceeding.
Turning to the final Mathews factor, two governmental interests are at stake in a parental rights termination proceeding: the state's "parens patriae interest in preserving and promoting the welfare of the child and a fiscal and administrative interest in reducing the cost and burden of such proceedings." Santosky, 455 U.S. at 766, 102 S.Ct. at 1401, 71 L.Ed.2d at 615. Use of a clear and convincing standard of proof at the best-interests hearing would likely not impose an increased fiscal burden on the state, since the higher evidentiary burden is already required at the unfitness hearing. Further, unlike other procedural safeguards, such as the right to counsel in criminal proceedings, no additional state resources would be called into play simply by virtue of a stricter evidentiary standard.
Use of a clear and convincing standard at the best-interests hearing would, however, frustrate the state's parens patriae interest in protecting the welfare of its children. Although the state's parens patriae interest generally favors preservation of the minor's family ties, it *1228 may also encompass an interest in severing family ties. 705 ILCS 405/1-2 (West 2000); see also Santosky, 455 U.S. at 767 n. 17, 102 S.Ct. at 1402 n. 17, 71 L.Ed.2d at 615 n. 17. As this court has recognized, "once a court has found by clear and convincing evidence that a parent is unfit, the state's interest in protecting the child is sufficiently compelling to allow the termination of parental rights." In re R.C., 195 Ill.2d 291, 308, 253 Ill.Dec. 699, 745 N.E.2d 1233 (2001). The increased burden on the State resulting from imposition of a clear and convincing standard of proof will hinder this substantial public interest.
Based on the foregoing analysis of the Mathews factors, we conclude, as did the appellate court, that due process does not require imposition of a clear and convincing standard of proof at a best-interests hearing, and that the preponderance standard of proof adequately ensures the level of certainty about the court's factual conclusions necessary to satisfy due process. In the present case, the trial court declined to recognize a particular burden of proof and instead indicated that its best-interests ruling was based on its "sound discretion." The trial court erred.
To remedy this error, the appellate court conducted its own review of the evidentiary record. Applying a manifest weight standard of review, the appellate court held that the State had failed to prove by a preponderance of the evidence that termination of respondent's parental rights was in D.T.'s best interest. The appellate court reversed the trial court's termination order and remanded for further proceedings. 338 Ill.App.3d at 154-55, 272 Ill.Dec. 829, 788 N.E.2d 133. Although we agree that remand is appropriate, we conclude that it was improper for the appellate court to conduct its own review of the evidence. This conclusion is guided by our decision in In re Enis, 121 Ill.2d 124, 117 Ill.Dec. 201, 520 N.E.2d 362 (1988). In Enis we considered whether an order terminating parental rights, which required clear and convincing evidence of unfitness, could be based upon prior findings of abuse supported by a preponderance of the evidence. The parents challenged the termination order on due process grounds. The appellate court reversed and remanded for further proceedings. In re Enis, 145 Ill.App.3d 753, 99 Ill.Dec. 584, 495 N.E.2d 1319 (1986). Relying on the Supreme Court's Santosky opinion discussed above, we affirmed the appellate court's decision. Significantly, this court did not undertake its own review of the evidence. Rather, we remanded the matter to the trial court for a new hearing.
"Because the trial court judged the evidence by the improper standard of proof, we order a new hearing on the State's petition to be conducted under the constitutionally proper standard, i.e., clear and convincing evidence. Santosky v. Kramer (1982), 455 U.S. 745, 770, 102 S.Ct. 1388, 1403, 71 L.Ed.2d 599, 617; In re Urbasek (1967), 38 Ill.2d 535, 543 [232 N.E.2d 716]." Enis, 121 Ill.2d at 134, 117 Ill.Dec. 201, 520 N.E.2d 362.
In similar fashion, we remand this matter to the trial court for a new best-interests hearing to be conducted under the constitutionally proper standard  a preponderance of the evidence.
We are aware that more than six years have passed since this case first entered the system, more than three years have passed since the trial court rendered its decision on the State's termination petition, and a new hearing will delay the ultimate disposition of this case and, importantly, D.T.'s placement. We are also aware that a new hearing, which necessarily includes evidence of D.T.'s current circumstances, creates the potential for a new *1229 round of appeals delaying still further a final decision on D.T.'s status. This court is not insensitive to the plight of children like D.T. We have on numerous occasions emphasized the time-sensitive nature of proceedings under the Juvenile Court Act and the need for expedited consideration of cases like the one at bar. E.g., In re D.F., 208 Ill.2d 223, 231, 280 Ill.Dec. 549, 802 N.E.2d 800 (2003); In re D.L., 191 Ill.2d 1, 13, 245 Ill.Dec. 256, 727 N.E.2d 990 (2000). Indeed, this court recently adopted a rule expressly providing for expedited appeals in child custody cases. Official Reports Advance Sheet No. 8 (April 14, 2004), R. 306A, eff. July 1, 2004. Accordingly, we wish to impress upon the parties the need to remove D.T. from legal limbo. D.T., who is now 10 years old, has been forced to confront years of uncertainty about whom he should call "mom" and what place he should call "home." His best interests must be the impetus for the parties' conduct and the proceedings on remand.
The judgment of the appellate court is affirmed in part and reversed in part and the cause remanded to the circuit court for further proceedings.
Affirmed in part and reversed in part; cause remanded.
Justice GARMAN, dissenting:
I agree that if a standard of proof applies to a best-interests determination, then it is the preponderance of the evidence. As the majority notes, "sound discretion" does not identify a standard of proof.
It is clear that two questions that the majority decides  whether "sound discretion" is a standard of proof and whether the correct standard of proof is the preponderance of the evidence  both presuppose an affirmative answer to the more basic question whether any standard of proof applies. Until that basic question is decided, it is premature to decide the standard of proof. The parties have failed to squarely raise and brief the question. Further, the majority opinion does not resolve the issue. I would require the parties to submit supplemental briefs addressing specifically whether there should be any standard of proof at a dispositional hearing, or whether the State's burden is to present sufficient relevant evidence to enable the court to exercise its discretion to select the most appropriate alternative.
The majority points out the State claims it presented "enough" evidence to support the decision to terminate respondent's parental rights. 212 Ill.2d at 355-56, 289 Ill.Dec. at 19, 818 N.E.2d at 1222. However, the majority falsely assumes that only a standard of proof can answer the question how much is enough. To say the State must present "enough" evidence may mean that the State bears a burden of production, not that the State also bears the burden of persuading the court. That is, it may be the State's burden is to present sufficient evidence relevant to the applicable legal criteria to provide an evidentiary basis upon which the court may exercise its discretion. See 705 ILCS 405/1-3(4.05) (West 2000) (listing factors court must consider in determining best interests). See also Boatmen's National Bank of Belleville v. Martin, 155 Ill.2d 305, 314, 185 Ill.Dec. 509, 614 N.E.2d 1194 (1993) (stating that reviewing court must look to applicable legal criteria to determine whether trial court abused its discretion). Because it is possible the State's burden is merely a burden of production, the majority has prematurely assumed some standard of proof is required.
Another of the majority's arguments suffers from the same defect. The majority points out the statute provides that," `The standard of proof and the rules of evidence in the nature of civil proceedings *1230 in this State are applicable to proceedings under this Article.'" 212 Ill.2d at 353, 289 Ill.Dec. at 17, 818 N.E.2d at 1220, quoting 705 ILCS 405/2-18(1) (West 2000). From this the majority concludes the statute "suggests" that one of the two standards of proof typical in civil proceedings must apply to a best-interests hearing. 212 Ill.2d at 353, 289 Ill.Dec. at 17, 818 N.E.2d at 1220. However, this assumes and does not prove that a best-interests hearing is the sort of proceeding in which some standard of proof must apply.
In addition to offering arguments that assume some standard of proof must apply, the majority also argues that a best-interests determination should not be within the court's discretion. The majority correctly points out that the decision to terminate parental rights is a very serious one and that, if it is a matter of judicial discretion, it may be reviewed only for abuse of that discretion. 212 Ill.2d at 357, 289 Ill.Dec. at 19-20, 818 N.E.2d at 1222. The majority then suggests that judicial rulings reviewed for abuse of discretion traditionally concern only control of the courtroom and maintaining the progress of litigation. 212 Ill.2d at 356-57, 289 Ill.Dec. at 19-20, 818 N.E.2d at 1222-23 (providing examples of rulings within the court's discretion). The majority concludes that the decision to permanently and completely sever a parent-child relationship "is plainly not the type of ruling to which the highly deferential abuse of discretion review traditionally applies." 212 Ill.2d at 357, 289 Ill.Dec. at 20, 818 N.E.2d at 1223.
I agree the decision whether to terminate parental rights is a very grave one. However, the majority's list of discretionary decisions suffers from a glaring omission. In a criminal case, the decision to impose a particular sentence within the range permitted by statute is a matter of judicial discretion. People v. La Pointe, 88 Ill.2d 482, 492, 59 Ill.Dec. 59, 431 N.E.2d 344 (1981). It seems beyond dispute that sentencing decisions are often every bit as grave as the decision whether to terminate parental rights. Nevertheless, "[s]entencing courts have traditionally heard evidence and found facts without any prescribed burden of proof at all." McMillan v. Pennsylvania, 477 U.S. 79, 91, 106 S.Ct. 2411, 2419, 91 L.Ed.2d 67, 80 (1986). Moreover, it is noteworthy that, just as a person may be punished for a crime only after he is convicted according to the standard of proof required by due process, parental rights may be terminated only after the parent is found unfit by clear and convincing evidence, the standard of proof that due process requires. See 705 ILCS 405/2-29(2) (West 2000) (requiring finding of unfitness by clear and convincing evidence); Santosky v. Kramer, 455 U.S. 745, 769, 102 S.Ct. 1388, 1403, 71 L.Ed.2d 599, 617 (1982) (holding that due process requires finding of permanent neglect under New York law be supported by clear and convincing evidence). Finally, in juvenile delinquency proceedings, the sentencing hearing is a best-interests hearing, albeit one in which the best interests of both the juvenile and the public are considered. 705 ILCS 405/5-705(1) (West 2002). In sum, because of the analogy with sentencing, which the majority fails to discuss, it is far from clear that the best-interests determination is not a matter of discretion to which no standard of proof applies.
Not only do I believe the majority's arguments are insufficient, I find at this point some positive reason to believe that discretion is appropriate at a best-interests hearing. The majority correctly notes that a standard of proof has to do with "the degree of confidence the trial judge must have in the correctness of his or her factual conclusions concerning the child's best interests." 212 Ill.2d at 355, 289 Ill.Dec. at 19, 818 N.E.2d at 1222. However, the ultimate decision about a child's best *1231 interests does not appear to be primarily a matter of "factual conclusions." Of course, the court's decision should be based on facts. However, the ultimate decision is largely a matter of weighing conflicting values and applying policy judgments to the facts. The factors the statute directs courts to consider support that conclusion. Courts must consider, inter alia, "the development of the child's identity" (705 ILCS 405/1-3(4.05)(b) (West 2000)), and "the uniqueness of every family and child" (705 ILCS 405/1-3(4.05)(h) (West 2000)). I suggest questions of "identity" and "uniqueness," and perhaps other factors as well, are largely value judgments. These are values chosen by the legislature and embodied in the statute. Identifying and weighing the values at stake is a matter of judgment. If the best-interests determination is largely a matter of judgment and not merely fact-finding, then it seems a standard of proof, which relates to factual conclusions, may impair the ability to achieve the goal that best serves the child's interests.
Finally, the potential consequences of the majority's decision should give us pause. The majority's decisions heightens the scrutiny reviewing courts apply to best-interests rulings. In the face of more intense review, courts will likely be more reluctant to take the step of terminating parental rights. Because the majority has made its decision without adequate briefing on a crucial question, I fear we may needlessly hamper our trial courts in the exercise of their duty to protect children like D.T.
For the foregoing reasons, I respectfully dissent.
Justice THOMAS joins in this dissent.
NOTES
[1] The trial court also terminated the parental rights of D.T.'s father. He is not a party to this appeal.
[2] We recognize that certain proceedings, although considered civil in nature, nonetheless require application of the criminal standard "beyond a reasonable doubt." E.g., 725 ILCS 205/3.01 (West 2002) (commitment proceeding under Sexually Dangerous Persons Act); In re W.C., 167 Ill.2d 307, 320-21, 212 Ill.Dec. 563, 657 N.E.2d 908 (1995) (juvenile delinquency proceeding). Application of this more stringent standard in a civil proceeding is the exception. Respondent does not argue that this standard is appropriate at a best-interests hearing.
[3] A finding of "permanent neglect" under the New York statute requires the State to establish, among other things, "that for more than a year after the child entered state custody, the agency `made diligent efforts to encourage and strengthen the parental relationship.' [Citation]. The State must further prove that during that same period, the child's natural parents failed `substantially and continuously or repeatedly to maintain contact with or plan for the future of the child although physically and financially able to do so.' [Citation]." Santosky, 455 U.S. at 748, 102 S.Ct. at 1392, 71 L.Ed.2d at 603.