NOTICE
Decision filed 09/26/23. The text of this decision may be changed or corrected prior to the filing of a Peti ion for Rehearing or the disposition of the same.

2023 IL App (5th) 230286-U

NO. 5-23-0286

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| *In re* Z.B.D., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Champaign County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 22-JA-89 |
| | ) | |
| Demetrius W., | ) | Honorable |
| | ) | Brett M. Olmstead, |
| Respondent-Appellant). | ) | Judge, presiding. |

JUSTICE McHANEY delivered the judgment of the court.
Justices Welch and Vaughan concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The circuit court reasonably required respondent to submit to DNA testing to prove he was the minor's father, rejecting respondent's unsupported assertions that the results might be misused in unrelated cases, and denied respondent's requests to present cumulative or irrelevant evidence. As any argument to the contrary would lack merit, we grant respondent's appointed appellate counsel leave to withdraw and affirm the circuit court's judgment.

¶ 2     Respondent, Demetrius W., appeals the circuit court's order requiring him to submit to DNA testing to establish that he is the father of Z.B.D. His appointed appellate counsel concludes that there is no reasonably meritorious argument that the court erred. Accordingly, he has filed a motion to withdraw as counsel. See *Anders v. California*, 386 U.S. 738 (1967). Counsel has notified respondent of his motion and this court has provided him with ample opportunity to

1

respond. However, he has not done so. After considering the record on appeal and counsel's motion, we agree that this appeal presents no arguably meritorious issues. Thus, we grant counsel leave to withdraw and affirm the circuit court's judgment.

¶ 3                                    BACKGROUND

¶ 4    In September 2022, the State filed a petition for adjudication of wardship alleging that Z.B.D. was abused and was in an injurious environment due to the abuse of his siblings. The petition named Marcell D. as Z.B.D.'s legal father and respondent as his putative father. Tangula B. is his mother.

¶ 5    At a shelter care hearing relating to Z.B.D. and two siblings, the circuit court found that Tangula B. was residing with Aaron O. who "regularly beats her children *** causing injuries," and that she was aware of the abuse but did nothing to prevent it. Accordingly, the court placed the three children in the temporary custody of the Department of Children and Family Services (DCFS).

¶ 6    The court ordered respondent and Marcell D. to submit to DNA testing to discern which was Z.B.D.'s father. In the ensuing months, the court denied numerous *pro se* motions by respondent, including one for DNA testing.

¶ 7    At a subsequent adjudicatory hearing, the State filed a supplemental petition alleging that Z.B.D. was neglected while with Tangula B. and Aaron O. because the environment exposed him to excessive corporal punishment. Tangula B. stipulated to that allegation and respondent waived his right to an adjudicatory hearing. Accordingly, the court found that the State had proved the allegations. The State dismissed the original petition.

2

¶ 8    Subsequently, the Center for Youth and Family Services unsuccessfully attempted to engage respondent, who was allegedly incarcerated, in the case. Z.B.D. was by then in the custody of his maternal grandmother, where he was doing well.

¶ 9    At the April 5, 2023, dispositional hearing, respondent represented himself. The court asked if anyone had any evidence to present. Respondent replied, "A lot of it, yes." He handed the court a witness list and an exhibit list. Respondent explained what he intended to prove with each witness and stated that the exhibits were generally intended to persuade the court "to terminate the rights of Tangula [B.]"

¶ 10    The court explained that it would not terminate anyone's parental rights at that proceeding. The only matters to be decided for each child were "whether that child ought to be made a ward of the Court. If so, then what to do with guardianship and what to do about custody." Asked how his evidence would be relevant to those issues, respondent replied, "I think it would support making the children a ward of the Court, and, hopefully, leaving them in the custody of where they are." The court refused respondent's proffered evidence, finding that it would be either irrelevant or cumulative.

¶ 11    After listening to recommendations, the court made Z.B.D. its ward, found Tangula B. and respondent unfit and unable, and Marcell D. unfit, unable, and unwilling to parent. It ordered Z.B.D. removed from his parents and placed in the custody and guardianship of DCFS.

¶ 12    Respondent requested visitation with Z.B.D. However, he further stated:

    "And I would decline to participate with any DNA taken of mine. I'm a—I'm a convicted felon, so there's DNA on file for me. I would ask that that DNA be used. Because of my underlying case, I've seen situations where they use—they—you—they get

3

DNA from you, and then plant it. So, I'm not gonna give any D—any DNA while I have pending charges. So, they can use what's still on file."

Finding that this "conspiracy theory *** lobbed to me is ridiculous," the court ordered respondent to cooperate with DNA testing.

¶ 13 Respondent filed a notice of appeal. He also filed a motion to stay the court's order requiring DNA testing. He alleged that a private DNA test established that he was Z.B.D.'s father. He further alleged:

"I have hard evidence that the State has planted DNA where there initially was none in case 21-CF-329 and fear that they will do the same thing to me in my felony case 20-CF-499. When that case has been resolved I will have no problem submitting to the testing. *** There has been no DNA recovered, tested, or at all involved in my 20-CF-499 case and it is in my best interest that I make sure it stays that way."

¶ 14 The court denied the motion, explaining that the court and the minors "need legal paternity established and are not required to accept the claimed results of private genetic testing that [was] never utilized to obtain a judgment of paternity."

¶ 15                                    ANALYSIS

¶ 16 Appellate counsel concludes that there is no reasonably meritorious argument that the circuit court erred by requiring respondent to submit to DNA testing and denying his motion to stay the order. We agree.

¶ 17 Children have an interest in a stable home life free from the "uncertain and fluctuating world of foster care." *In re D.T.*, 212 Ill. 2d 347, 365 (2004). "[C]hild-custody litigation must be concluded as rapidly as is consistent with fairness." *Lassiter v. Department of Social Services*, 452 U.S. 18, 32 (1981).

4

¶ 18 The circuit court recognized this need for stability in ordering respondent to cooperate with DNA testing and denying his motion for a stay. A fundamental step in providing the needed stability for Z.B.D. is ascertaining who his father is. Respondent has sought visitation with the minor absent proof that he is his parent.

¶ 19 Respondent's only reason for not cooperating with DNA testing was a vague, unsupported fear that the results might be misused at some future time in an unrelated case. As counsel notes, respondent has provided no evidence that the State "planted" DNA in the 2021 criminal case or that it is likely to do so again in the 2020 case. Even indulging respondent's wild speculation, his theory makes little sense. He asserted that the State had his DNA profile in its database and a State actor misused it in one of his criminal cases. He does not explain why that same person could not have used the existing DNA profile in the even older case rather than await a new DNA test that might never occur.

¶ 20 Respondent claimed that a private DNA test established that he is Z.B.D.'s father but offered no proof. He provided no details on who did the test or how the results might be obtained. Given Z.B.D.'s compelling interest in achieving stability in his life as quickly as practicable, the circuit court did not err in ordering respondent to cooperate with DNA testing and in rejecting his highly speculative, unproven "conspiracy theory."

¶ 21 Counsel asserts that, in discussing the case with respondent, he wanted to raise the issue whether the circuit court erred in rejecting his proffered evidence. Respondent's asserted reasons for wanting to present evidence were to persuade the court to "mak[e] the children a ward of the Court, and, hopefully, leav[e] them in the custody of where they are" and to terminate Tangula B.'s parental rights.

¶ 22 Counsel concludes, however, that the court correctly decided that the evidence was either cumulative or irrelevant.

¶ 23 As to the latter, the court explained that the termination of parental rights was not the subject of the hearing. The circuit court has discretion to decide whether evidence is relevant and admissible. *People v. Garcia*, 2012 IL App (2d) 100656, ¶ 17. The court did not abuse its discretion in rejecting evidence offered to prove that Tangula B.'s parental rights should be terminated on the ground that it was irrelevant.

¶ 24 As to the former point, the court rightly decided that any such evidence from respondent would be cumulative. The record was replete with evidence of Tangula B.'s poor parenting and, indeed, she stipulated that Z.B.D. was neglected. Based on these factors and the parties' recommendations, the court found Tangula B. unfit and granted custody and guardianship of Z.B.D. to DCFS, which apparently intended to continue the current placement. Thus, respondent essentially received the relief he requested. See *Material Service Corp. v. Department of Revenue*, 98 Ill. 2d 382, 386 (1983) ("one who has obtained by judgment all that has been asked for in the trial court cannot appeal from the judgment").

¶ 25                                   CONCLUSION

¶ 26 As this appeal presents no issue of arguable merit, we grant respondent's counsel leave to withdraw and affirm the circuit court's judgment.

¶ 27 Motion granted; judgment affirmed.